[Sac. No. 2239. Department One.—October 13, 1916.]

DORA MELLOR, Respondent, v. BANK OF WILLOWS et al., Defendants; JOHN MELLOR et al., Interveners and Appellants.

GIFT CAUSA MORTIS—DEPOSIT IN BANK—DELIVERY OF CERTIFICATE OF DEPOSIT—EVIDENCE.—In this action by a surviving wife against a bank to recover a sum of money represented by a certificate of deposit payable to the order of her deceased husband, which she claimed to have received from him as a gift *causa mortis*, the evidence of the wife, although it is to be received with caution, is held

sufficient to justify the finding that the deceased gave the certificate of deposit to the plaintiff, that he did so with the intention of making a gift of the money to her, and that he acted in contemplation of death.

ID.—INTENTION OF DONOR, HOW MANIFESTED.—The donor's intention to make such gift need not be manifested solely by the particular words employed by him. It is a question of fact to be determined upon all the evidence in the case—the situation of the parties, their relationship, the circumstances surrounding the transaction, the apparent purpose in making the gift, the words spoken at the time, and the like.

ID.—DELIVERY OF UNINDORSED CERTIFICATE OF DEPOSIT — EQUITABLE ASSIGNMENT.—Where there is no opportunity to make an indorsement or written assignment of an instrument, payable to order, such as a certificate of deposit intended as a gift *causa mortis*, the absence of an indorsement does not raise a presumption against the validity of the transfer. Its delivery constituted an equitable assignment of the money on deposit.

ID.—DEPOSIT IN BANK MAY BE GIVEN CAUSA MORTIS.—A deposit in a bank is a proper subject of a gift *causa mortis*, and may be evidenced by the delivery of the certificate of deposit without indorsement. The conditions of transfer printed upon the certificate calling for an indorsement do not alter the rule.

APPEAL from an order of the Superior Court of Glenn County refusing a new trial. John F. Ellison, Judge.

The facts are stated in the opinion of the court.

Arthur C. Huston, and W. T. Belieu, for Appellants.

A. J. Zumwalt, and Frank Freeman, for Respondent.

LAWLOR, J.—This action was brought by Dora Mellor, the plaintiff and respondent, to recover from the Bank of Willows the sum of $5,162.50, representing a certificate of deposit for five thousand dollars, and the interest thereon, issued by the defendant bank and payable to George Mellor, the deceased husband of the plaintiff, or order. The plaintiff claims that she received the money as a gift *causa mortis* from her husband. By leave of the court, a complaint in intervention was filed on behalf of certain heirs of the decedent who are contesting the plaintiff's claim. The defendant bank deposited the money in court to be delivered to the successful

party in accordance with the decree. The case was tried without a jury, and judgment was rendered for the plaintiff. The interveners interposed a motion for a new trial, which was denied, and from such order this appeal is prosecuted.

The sole question presented is whether Dora Mellor acquired title and right of possession to the funds represented by the certificate of deposit. The court found: "That on the twenty-fifth day of November, 1911, George Mellor, early in the morning of that day, became violently ill, and later, to wit, on or about 8 o'clock P. M. of that day, died; that during said last illness the said George Mellor, while in great pain, and believing that he was about to die, and in the fear and peril of death, delivered into the possession of, and gave to plaintiff, Dora Mellor, with intention to make a gift of the same to her, the certificate of deposit . . . and the said George Mellor died without having revoked said gift of said certificate of deposit."

1. It is insisted by the appellants that the evidence is insufficient to support the finding that the gift was made by the decedent in view of impending dissolution from the effect of his last illness. For more than seventeen years Mellor had suffered from a serious ailment involving the kidneys. The malady grew worse as time wore on, and in later years was frequently accompanied by attacks during which stones would pass from the kidneys to the bladder, causing intense pain. He was admonished by Doctor Randolph, who had attended him for nearly twenty years, that he was likely to die very suddenly in one of these attacks. The physician, testifying for the appellants, on cross-examination said: "People die suddenly in those cases; I do not know whether or not he had been suffering a number of weeks prior to that time; I had not called upon him and he had not called me. Mr. Mellor always thought that he would pass away in one of those spells; he thought they would finally kill him; he said that to me often; I have had conversations with him and have told him that it would not be more than two or three years that he had to fix up his business. I said, 'George, you are going to quit on the sidewalk and you had better fix up your business.' I told him that from the very nature of his ailment." His wife said that he was impressed by these warnings. She testified: "He had talked about it more than once, and he said if he ever got a rough one he wouldn't live,

as he was getting older it worried him more.'' Mellor's attorney testified to like effect. In the early morning of the day of his death, Mellor was again stricken with ''one of his old spells.'' He suffered intensely but recovered sufficiently to go to the garage, of which he had charge, only to return a few moments later in a condition of great agony. ''When he first came home,'' his wife testified, ''he looked agony and seemed to have a death pallor on his face, and he said, 'it is a rough one.' '' She assisted him to undress and helped him to bed. It was at this time he handed her a purse containing $150 in cash and three certificates of deposit, including the one involved in this action. Subsequently he repeated the remark, which must be regarded as significant: ''It is a rough one, Dora.'' After getting into bed he laid over on his side and said, ''Dora, the taxes are due Monday. See that they do not become delinquent if I do not awake.'' Although the physician made several visits to Mellor during the day, he did not recover from the attack and died about 8 o'clock in the evening. It is provided in the Civil Code that ''a gift made during the last illness of the giver, or under circumstances which would naturally impress him with an expectation of speedy death, is presumed to be a gift in view of death.'' (Sec. 1150.) But unaided by this presumption the evidence is amply sufficient to support the finding of the court that the decedent acted in contemplation of death.

2. The appellants next contend that the court was not warranted in finding that the decedent intended to make, and did make, a gift to the plaintiff. They claim that ''the evidence is wholly insufficient to justify the finding of the court in favor of the plaintiff, for the reason that she is asserting title to certificates of deposit on her unsupported statement that her deceased husband, George Mellor, made a gift *causa mortis* of them.'' The rule is, as argued by them: ''He who attempts to establish title to property through a gift as against the estate of a decedent takes upon himself a heavy burden, which he must support by evidence of great probative force which clearly establishes every element of a valid gift.'' (*Denigan* v. *Hibernia etc. Soc.*, 127 Cal. 137, [159 Pac. 389].) No one else was present at the time the plaintiff claims the decedent gave her the certificate of deposit. It is well established that under such circumstances the testimony of the claimant should be viewed with caution, and even with sus-

picion in order to prevent fraud. (*Freese* v. *Odd Fellows' Sav. Bank,* 136 Cal. 662, [69 Pac. 493].) But while this is true, the trial court in this case has found in favor of the testimony of the plaintiff, and we cannot assume that in making its finding the court ignored the rules above stated.

Her testimony follows: "Saturday morning, the twenty-fifth day of November, 1911, when he gave them to me he was sitting on the edge of the bed; I was undressing him; I took off his shoes; I helped him take off his overalls and he puts his hand in his pocket and takes out his purse and says: 'Here, Dora, here are the certificates of deposit. I should have attended to them before.' He said: 'Take them to Clarence [referring to the cashier of the defendant bank] and they will be all right.' It was about 8 o'clock in the morning when he said this. He was very sick; suffering a great deal at this time. I took the purse and put it between the mattresses of the bed he was lying on and they remained there until he died. He died about 8 o'clock in the evening. I did not open it until Sunday morning, then I looked in the purse; the purse had been in my possession all the time; at the time I opened the purse I found these certificates of deposit and they have been in my possession ever since." She also testified that this was the first time he ever mentioned the certificates to her. He did not refer to them again.

"Upon this expression of the decedent, assuming it to have been made," insist the appellants, "the court must base a finding that the deceased made a gift of the certificates to Mrs. Mellor." It is argued: "There was no word spoken indicating an intention to give the certificates to anyone. Mellor did not employ the language that is usually used to indicate an intention to give. He did not say, 'These are yours,' or 'I give these to you,' or 'Take these for yourself.'" But the intention to give need not be manifested solely by the particular words employed by the donor. It is a question of fact to be determined like other questions of fact upon all the evidence in the case—the situation of the parties, their relationship, the circumstances surrounding the transaction, the apparent purpose in making the gift, the words spoken at the time, and the like. (*Estate of Hall,* 154 Cal. 527, [98 Pac. 269.] See *Follmer* v. *Rohrer,* 158 Cal. 755, [112 Pac. 544].) If the words accompanying the delivery of the thing can be said to be expressive of a gift and, in the light of the circum-

stances, consistent with the intention to give, the execution of the gift is established. In considering a similar question, the court remarked in *Vandor* v. *Roach,* 73 Cal. 614, [15 Pac. 354] : "The counsel says that the operative words of a gift are, 'I give,' or 'I have given'; and that these words are wanting. But we do not think that any formula or set phrase is necessary. It is sufficient if there was delivery, and any words importing an intention to give." While it is not necessary that the words used shall be exclusively language of gift, when tested by all the circumstances of the case, they must be susceptible of that meaning. In this case, possibly, as contended by the appellants, the bare words employed by Mellor might constitute a direction merely to deliver the certificates to the cashier of the bank. But the language is also consistent with an intention to make a gift, and, as we will presently show, the decedent's intention to make a gift is well established by the evidence. It must therefore be held that the language used constitutes words of gift.

For more than a quarter of a century Mellor and his wife lived together, during the greater part of which time he was afflicted with the kidney trouble which eventually caused his death. The warnings of his physician that he was likely to die suddenly, and the admonition to fix up his business, caused him unceasing worry. But there is no evidence that he had previously made any attempt to provide for his wife's future. When, however, the final attack came, and he realized his life would soon end, it is apparent that the duty of providing for her was uppermost in his thoughts. It was then he handed her the certificates of deposit. As is said in *Davie* v. *Davie,* 47 Wash. 231, [91 Pac. 950] : "It would seem to be but a natural thing for a man in the expectation of near approaching death to make a gift of this kind to his wife." There are circumstances where the presumption of gift arises from the moral obligation to give. (See *Spitler* v. *Kaeding,* 133 Cal. 500, [65 Pac. 1040].) It seems to us that such a case is presented here. No creditors are complaining. The only parties contesting the claim of the wife are heirs of the decedent, residents of England, whom he had not seen for forty years. Nor is it suggested that any will was made by the decedent, the terms of which are inconsistent with merely the gift. The appellant's suggestion that perhaps Mellor in-

tended the plaintiff should pay the taxes which were due out of the money on deposit is without merit.

It is also argued that had Mellor intended to make a gift he would have clearly expressed his intention in apt words, and that the absence of such words must be taken as evidence that he had no such intention. But his failure to use more elaborate language cannot be construed against the gift. When he gave the plaintiff the certificates of deposit he was suffering intensely and apparently was unable to converse or concentrate his mind to any extent. While this circumstance did not dispense with the necessity of using appropriate words of gift, it may be considered in explanation of his failure to employ formal or conventional language. The trial court, therefore, may well have concluded that but for his physical condition he would have said, in effect: "Dora, I make you a gift of the certificate of deposit and Clarence will give you the money." It is also quite evident that he trusted to the cashier of the bank to recognize the right of the plaintiff to receive the money, and considered more specific directions to her as unnecessary. Nor was it necessary for his wife to ask him whether the money was intended as a gift, to insist upon full particulars as to the action expected of the cashier, or to suggest that the certificate of deposit be indorsed. It was sufficient that both parties to the transaction understood that a gift of the money represented by the certificate of deposit was intended to be made, and that it was given and accepted in this spirit. We think the evidence fully sustains the finding that the decedent gave the certificate of deposit to the plaintiff, and that he did so with the intention of making a gift of the money to her.

3. The certificate of deposit was unindorsed. The appellants contend that this was a fatal defect to the validity of the gift. "Assuming for the sake of argument," they say, "that Mellor intended to make a gift, and that he actually delivered the certificates with the intention that they should be the property of Mrs. Mellor, still there is no gift, because the certificates were not indorsed." But the wife testified: "At the time Mr. Mellor delivered these certificates of deposit to me, he was too sick to write. . . . He was very sick, suffering a great deal at this time." Where there is no opportunity to make an indorsement or written assignment of an instrument, such as a certificate of deposit intended as a gift *causa mortis,*

the absence of an indorsement does not raise a presumption against the validity of the transfer. The certificate was payable "to self or order." Its delivery constituted an equitable assignment of the money on deposit. (*Basket* v. *Hassell,* 107 U. S. 602, [27 L. Ed. 500, 2 Sup. Ct. Rep. 415].) This clearly brings the case within the principle of the prevailing authorities, that a gift of a deposit in a bank is a proper subject of a gift *causa mortis,* and may be evidenced by the delivery of the certificate of deposit without indorsement. (*Royston* v. *McCulley* (Tenn.), 52 L. R. A. 899, [59 S. W. 525]; *Caldwell* v. *Goodenough,* 170 Mich. 114, [135 N. W. 1057]; *Connor* v. *Root,* 11 Colo. 183, [17 Pac. 773]; *First National Bank etc.* v. *O'Bryne,* 177 Ill. App. 473; 12 R. C. L., p. 965, sec. 38; 20 Cyc. 1238.) The conditions of transfer printed upon the certificate calling for an indorsement do not alter the rule. (*Ridden* v. *Thrall,* 125 N. Y. 572, [21 Am. St. Rep. 758, 11 L. R. A. 684, 26 N. E. 627].) The authorities relied upon by the appellants to establish the necessity of an indorsement or actual delivery of the funds on deposit are, for the most part, concerned with checks, drafts, and other evidences of money on deposit in banks of issue, discount, and deposits. These cases are not in point, for a different rule generally prevails where the money can be drawn from the bank by the depositor's check or draft. In this state it has been well settled that "negotiable paper payable to order is the subject of a *donatio causa mortis,* even though it is not indorsed by the payee." (*Edwards* v. *Wagner,* 121 Cal. 376, [53 Pac. 821].) This rule has been applied to a promissory note (*Drake* v. *Heiken,* 61 Cal. 346, [44 Am. Rep. 553]), United States bonds (*Vandor* v. *Roach, supra*), and bills of exchange (*Edward* v. *Wagner, supra*). It applies with equal force to a certificate of deposit, payable to order, when transferred as a gift *causa mortis.*

We find no error in the rulings of the court admitting the testimony complained of.

The order is affirmed.

Sloss, J., concurred.

SHAW, J.—I am of the opinion that there was sufficient evidence, direct and circumstantial, to support the findings, and that the equitable title to the certificate of deposit passed by its delivery with the intent thereby to make a gift of it.

I therefore concur in the judgment.