[Civ. No. 5799. First Appellate District, Division Two.—July 28, 1927.]

B. H. PADDOCK, as Administrator, etc., Respondent, v. JOHN F. FONNER, Appellant.

Henry L. Corson for Appellant.

J. W. Henderson for Respondent.

NOURSE, J.—Plaintiff, as administrator of the estate of May Howe, sued the defendant for money had and received. The complaint alleged that on June 21, 1923, May Howe was the owner of money on deposit in a savings account in the Anglo-California Trust Company and of Liberty bonds held by the same bank, amounting in all to $3,949.27; that on said day she authorized the said bank to pay the money to defendant for the use and benefit of May Howe; and that on June 22, 1923, defendant received said sum of money from said bank and has retained the same. The answer denied that May Howe authorized the defendant to withdraw the money from the bank for her use and benefit and alleged that the defendant has claimed and still claims the money as his own. Trial was had before the court without a jury and judgment went for the plaintiff for $3,634.11, being the amount claimed, less the sum of $315.16, which defendant had paid out to meet the funeral expenses of the deceased. From this judgment the defendant has appealed on a typewritten record.

The trial court found that "on the 21st day of June, 1923, at Los Altos, Santa Clara County, California, said

May Howe, in writing, authorized and instructed the said Trust Company to sell the said liberty bond and pay the proceeds thereof, together with the said account to the defendant John F. Fonner, for the use and benefit of the said May Howe, and deliver the said writing to Edith Bagot, a niece, who delivered it to the defendant on the 22nd day of June, 1923; that thereafter and on the 22nd day of June, 1923, the said May Howe died.'' It was also found that the defendant received from the bank the money in suit and the proceeds of the Liberty bonds, all of which he converted to his own use, except the sum paid by him for the funeral expenses of the deceased. Through the pleading of the ownership of the fund the defendant raised the issue that it came into his possession as the result of a voluntary gift *causa mortis*. The whole case was tried upon the theory that this issue was properly pleaded, and, in fact, no other issue was heard by the trial court and this appeal is presented on that point alone. Both parties argue the weight of the evidence—the appellant insisting that he has proved every essential element of a gift *causa mortis*, while the respondent claims that the evidence shows that the attempted gift was incomplete. The evidence tending to prove the gift is found in the testimony of the appellant, of his brother, and of Mrs. Bagot, a witness who was distinctly hostile to the appellant.

The deceased was a widow who had been seriously ill for more than a year prior to her death, suffering from a cancer for which she had undergone an operation; the appellant had occupied a room at her house for more than ten years and the two were very friendly; for some years prior to her death the deceased had been estranged from other members of her family; this unfriendly feeling of the family included the appellant and was carried to the extent of their refusal to attend the funeral; about four weeks before she died the deceased went to Los Altos, where she occupied a house belonging to appellant's brother and where she was under the care of a niece, Mrs. Edith Bagot; about two weeks before she died the deceased told the appellant that she was giving him the money and Liberty bond, because of the many kindnesses he had shown her during her illness, and that she wanted him to pay the funeral expenses

out of it and keep the balance; a short time thereafter she told him she would prepare an order on the bank authorizing him to draw the fund; and on the Sunday preceding her death she told the appellant's brother the she was giving the fund to appellant under these same conditions. On the evening preceding her death she dictated to Mrs. Bagot an order on the bank, reading as follows:

"Los Altos, Calif. June 21st, 1923.

"Anglo-California Trust Co.

"Sirs: Enclosed please find pass books. I wish to close my account and if possible to sell my liberty bond. Kindly pay the balance of my account to John F. Fonner. It is necessary to close the account at once as I am very ill and must have the money.

"Sincerely yours,

"MRS. MAY HOWE."

She then directed Mrs. Bagot to place this order with her pass-book and to deliver them to appellant; this was done on the following day prior to the death of the decedent.

This written order was the basis of the finding of the trial court that the deceased authorized the bank *in writing* to pay over the money in the bank and the proceeds of the bond to the appellant for her own use.

The essentials of a valid gift *causa mortis* are outlined in 28 Corpus Juris, page 687, as follows: "To constitute a valid gift *causa mortis,* the gift must be made in view of the donor's impending death, the donor must die of the disorder or peril, and there must be a delivery of the thing given. In addition to this, there must be a donor competent to make the gift, an intent on his part to do so, and an acceptance by the donee." It is conceded by the parties that if any one of these essentials is absent the validity of the gift cannot be sustained. Respondent argues that the evidence fails to show that the gift was made in view of the donor's impending death; that there was a delivery of the subject of the gift; an intention to make a donation; or an acceptance by the donee. We are not able to follow respondent in his argument that the gift was not made in contemplation of impending death in view of the presumption found in section 1150 of the Civil Code, and the evidence which disclosed that the decedent was suffering from

an incurable malady, and that she had on a number of occasions expressed the view that she was continually getting worse. ■ The evidence of delivery of the pass-book and order to Mrs. Bagot as agent for the decedent was a sufficient delivery of the funds represented by the pass-book and would constitute a valid gift *causa mortis* if the other elements were present. (*Snidow* v. *Brotherton,* 140 Va. 187 [40 A. L. R. 1246 and 1255, note, 124 S. E. 180].)

■ The evidence of acceptance of the gift on the part of the appellant was sufficient for this purpose as it shows that he received the pass-book and order and thereby took into his possession the means of obtaining the funds on deposit in the bank. The fact that he at a later date offered to turn the book over to the administratrix of the estate for the purpose of adjudication of the dispute between the parties cannot affect the validity of the gift made on June 22d so far as the element of his acceptance is concerned.

However, the important element of intention to make the gift is the one in which appellant's proof has failed. It appears that on a number of occasions the decedent told the appellant that she was going to turn over the money and Liberty bond in the Fillmore Bank to him; that she wanted him to pay her funeral expenses out of this money and "the rest I am giving to you." This is practically the same language that is used in *Knight* v. *Tripp,* 121 Cal. 674, 679 [54 Pac. 267, 269], where the supreme court held that the statement of the deceased, "I want to give it to you, or place all of it in your hands, and tell you those whom I want should have it," merely indicated a purpose or desire on the part of the decedent as to the disposition of the property and was not sufficient to disclose an intention to make a gift of it. It was said in *Hart* v. *Ketchum,* 121 Cal. 426, 428 [53 Pac. 931, 932]: "If the donee is merely empowered to draw the money, and is thereafter to dispose of it in accordance with instructions from the donor, he is only an agent of the donor and his agency terminates with the death of the donor." ■ Here the evidence is that when the decedent delivered to the appellant her pass-book she gave him a written order upon the bank authorizing him to collect the money on deposit and the proceeds of her Liberty bonds and that in this order she stated that "it is necessary to close

the account at once because I am very ill and must have the money." It is a fair interpretation of this language that the decedent did not intend to make an absolute gift of the fund to the appellant, but that she merely made him her agent for the purpose of drawing the money out of the bank to be used for her living expenses. It was the function of the trial court in the first instance to interpret this writing for the purpose of determining the essential question as to whether the decedent intended to make a gift of the fund on deposit in the bank, and the trial court having found that the decedent authorized the appellant to draw this money for the use and benefit of the decedent, we cannot say that there is not evidence sufficient to support that finding.

Judgment affirmed.

Sturtevant, J., and Koford, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 26, 1927.