[L. A. No. 16889.  In Bank.—September 28, 1939.]

TERESA A. BRAUN, Respondent, v. BEN H. BROWN, Administrator, etc., Appellant.

J. H. O'Connor, County Counsel, Ernest Purdum and
William E. Lamoreaux, Deputy County Counsel, Louis J.

Canepa, ·C. M. Castruccio and Horace W. Danforth, for Appellant.

J. Marion Wright and Owen E. Kupfer for Respondent.

PULLEN, J., *pro tem.*—Two matters, a motion to recall a writ of *supersedeas* and an appeal from a judgment, are before us. A determination of the appeal will make unnecessary any special consideration of the motion and we will, therefore, direct our attention first to the merits of the appeal.

The action was brought against the administrator of the estate of Julius H. Schmidt, deceased, to establish a gift *causa mortis* by deceased to plaintiff of certain personal property, and to quiet title thereto. This personal property, consisting of stocks, bonds, promissory notes, a diamond ring and bank deposit books during his lifetime belonged to Schmidt, and was kept in a safe deposit box in a bank in the city of Los Angeles. After the death of Schmidt, plaintiff attempted to take over the box and its contents, but upon refusal of the bank to surrender possession to her, she turned the key to the box over to defendant, who had previously obtained letters of administration in the estate of Schmidt, and upon the refusal of the administrator to recognize her claim to the property brought this action to secure the same or its value.

The underlying facts as revealed by the record briefly are that some time in 1922 Schmidt met Teresa A. Braun, the plaintiff, at a church bazaar in Chicago. He was then a man about 52 years of age and unmarried. In 1924 plaintiff, then a young woman, came to California with her parents, who established their home in Los Angeles. The following year Schmidt, who had retired from business, also came to Los Angeles, and from that time until his last illness spent several hours almost every day in the company of plaintiff, either in her home or accompanying her to and from her place of employment or escorting her to church and places of entertainment. During that time she received from him notes and Easter cards addressed to her in terms of friendship and endearment, and on more than one occasion he proposed marriage, which proposals were neither accepted nor encouraged by plaintiff. In 1925 he attempted to make

her a gift of a diamond engagement ring, which she refused, and in 1926 he purchased and offered her an automobile, which she also refused to accept. The relationship between the two, however, continued very friendly and apparently did not abate.

On January 6, 1937, Schmidt complained to the sexton of his church that he did not feel well, and later in the day he suffered a slight paralytic stroke. The next day he was confined to his room and a doctor was called to attend him. A few days later Mr. Assmann, a brother-in-law, came over from Long Beach, where he was spending the winter, and remained with him almost continuously until Schmidt was taken to a hospital on January 26th, where he remained until his death on February 11, 1937.

After Schmidt was confined to his room by reason of illness, Miss Braun called upon him almost daily. On January 21st she called as usual. After some conversation about what had occurred that day at her place of employment Schmidt asked his brother-in-law, who was present, to bring to him his purse. He thereupon took from this purse a safe deposit key which he handed to plaintiff, saying, "Teresa, every thing in the box belongs to you," and, turning to Assmann, said, "Bernard, you hear, I want Teresa to have every thing in the box." He also told her that there was more than enough money in the box for her to live on and that she would not have to work any more. A day or so later Schmidt gave plaintiff a check for $175, drawn from funds other than those in the safe deposit box, and gave it to plaintiff in order that she might pay his hotel and hospital bills. Plaintiff then took the key and kept it among her effects at her home until after the death of Schmidt, when, as stated above, she gave it to the administrator and, upon his refusal to redeliver the key, this action was commenced.

The trial court confirmed the gift to plaintiff and ordered that the property be delivered to her or, in the alternative, the value thereof. It is from that judgment that this appeal is taken.

Certain preliminary motions as to the right of Assmann to intervene have already been before this court and disposed of (*Braun* v. *Brown,* 13 Cal. (2d) 130 [87 Pac. (2d) 1009]), leaving for consideration the basic question in controversy, that is, did Schmidt on the 21st day of January,

1937, entertain and express the specific intention then and there to give to plaintiff the property in the safe deposit box; and did he then and there effectuate that intention by the delivery of that property to her, divesting himself of dominion thereover, and was he actuated therein by the thought of death, and did plaintiff accept the same?

Section 1149 of the Civil Code defines a gift in view of death "as one, which is made in contemplation, fear or peril of death, and with intent that it shall take effect only in case of the death of the giver", and by section 1150 of the Civil Code a gift is presumed to be in view of death when made during the last illness of the giver or under circumstances which would naturally impress him with an expectation of speedy death.

The court found it to be true that on the 21st day of January, 1937, Julius H. Schmidt was the sole owner and in the exclusive possession of all the property here involved; that the same was kept in a certain safe deposit box, and the sole means of access thereto and the contents thereof was by one key kept in possession of Schmidt; that during his last illness he transferred, delivered and handed over to plaintiff this key and at the same time told her he was thereby making to her a gift of all the contents of said box; that by such delivery of the key and his statement he thereby made a gift and transfer *causa mortis* to plaintiff; and that plaintiff accepted said gift and delivery and that such gift was unrevoked and remained valid and binding at his death.

Appellant contends that the failure of the court to specifically find that Schmidt acted in contemplation of death is reversible error. The finding recited that by the delivery of the key Schmidt gave to plaintiff, *causa mortis,* all his interest in the property. By the adverbial use of the words *"causa mortis"* there is embodied in the finding all the elements as to the influence of the thought of death connoted by such words, making the finding adequate.

The evidence fairly establishes that the gift was made by Schmidt during his last illness, and there can be little doubt from the evidence that the circumstances surrounding such illness impressed him with the expectation of death, and, by the delivery of the key and his statement to plaintiff he intended to set over to plaintiff all his interest in the property.

At the time of the making of the gift Schmidt was ill in bed in his hotel room; he had suffered a stroke and had told certain friends that he was not feeling well. He was arranging to go to a hospital and had made provision for plaintiff to pay his hotel and hospital bills. His brother-in-law, realizing the seriousness of his condition, had left his place of abode in Long Beach and had a cot moved into the room of Schmidt, so he could be near him all night; he was at times delirious; a doctor had examined him and advised hospital care. He was then about 67 years of age and had never theretofore been sick. He left the hotel January 26th and died 15 days later. Such circumstances could not but have caused even the most optimistic of men to contemplate to some degree at least the fact of death. Realizing, however, that under such circumstances any reference to or discussion of death is universally avoided by the patient, his friends and the doctor, section 1150 of the Civil Code declares that a gift made during the last illness or under circumstances which would naturally impress one with an expectation of speedy death is presumed to be a gift in view of death. This presumption is evidence and is sufficient to establish the fact unless rebutted.

But the fear of impending death is not a sole essential element of a gift *causa mortis*. The code predicates such a gift on either contemplation of death or peril of death; and as pointed out in *Donovan* v. *Hibernia Sav. & Loan Soc.*, 90 Cal. App. 489 [265 Pac. 995], while one may make general statements to the effect that he is feeling fine, yet his condition may be known to him to be critical. One may realize himself to be in peril of death and yet not expect to die. He may still believe his chances to live are greater than his chances to die, yet prudently take steps to adjust his affairs in case of death. In *Knight* v. *Tripp*, 121 Cal. 674 [54 Pac. 267], Mrs. Cook was about to undergo an operation. She sent for her friend, the defendant, and by an instrument in writing attempted to convey to him various personal property. In considering whether there was a gift *causa mortis*, the court said:

"Mrs. Cook was an invalid, 54 years of age, and it must be assumed that she had at best a hope that she would come safely out of the surgical operation that she was about to undergo and that her life would be prolonged thereby. . . .

Her disposition of her property was evidently made in contemplation of her death under the surgical operation but it was not necessary for her to state that fact as one of its terms. If the circumstances under which it was made were such as to authorize such conclusion it will be treated the same as if it had been so stated by her.''

Both the circumstantial evidence and the presumption raised by the provisions of the code are sufficient to support the finding that the gift by Schmidt to respondent was made by him in contemplation of death and was a gift *causa mortis*.

█ It is next urged by appellant that there is no substantial evidence in the record to support the finding that Schmidt had the specific intent then and there to give to plaintiff the contents of the safe deposit box, or did anything to effectuate delivery, or that plaintiff accepted the same.

As to the intent, we find that when Schmidt handed the key to plaintiff he said, ''Every thing in the box belongs to you,'' and also said to plaintiff that she wouldn't have to work any more, there would be enough money there for her to live on, and, calling upon his brother-in-law as a witness, said, ''Bernard, you hear, I want Teresa to have every thing in the box.'' Here are words of present donation, accompanied by the delivery into her hands of the means of access to the property in the presence of a witness particularly enjoined to act as such.

The mother of plaintiff in her broken English testified as to a conversation with Schmidt some five or six days after the delivery of the key, wherein Schmidt, according to her, said, ''Yes, every thing what I have in the box belongs to Teresa; I told her that all the time,'' and also testified that at that time Schmidt ''asked Bernard to make a paper out for that he want to sign it that every thing belongs to Teresa'', to which Bernard replied, ''We go to the hospital, then you can make out all the papers what you want.'' She also said Schmidt said, ''Every thing was in the box—give to her.''

Appellant, analyzing this testimony, claims to find no express or direct words of gift or giving, nor any clear expression of intent that what had theretofore been the property of Schmidt then and there passed from him into the sole ownership of plaintiff. It cannot be fairly required that words spoken by one during one's last illness or in fear of

death shall be as grammatically correct or as comprehensive as would be language used under different circumstances, nor should the words of one to whom the use of English is obviously an effort outweigh other circumstances in the case. All that is required is that appropriate words of gift be used, and such words are here found. Nor, as said in *Mellor* v. *Bank of Willows*, 173 Cal. 454 [160 Pac. 567], need the intention to give be manifested solely by the particular words employed by the donor.

"It is a question of fact to be determined like other questions of fact upon all the evidence in the case—the situation of the parties, their relationship, the circumstances surrounding the transaction, the apparent purpose in making the gift, the words spoken at the time, and the like. (Citing cases.) If the words accompanying the delivery of the thing can be said to be expressive of a gift and, in the light of the circumstances, consistent with the intention to give, the execution of a gift is established."

■ Appellant stresses the fact that on more than one occasion after saying to plaintiff, "Every thing in the box belongs to you," he repeated to others, among them the mother, "Every thing what I have in the box belongs to Teresa," as indicating some future contingency. With this we cannot agree. Schmidt knew that he had not actually handed to plaintiff the physical possession of the contents of the box. He knew that at some future time she would actually possess herself of them. It was, therefore, of that future event and not the gift itself upon which his mind dwelt. So, also, the desire of Schmidt to sign a paper of some kind to confirm the fact that he had made a gift to respondent in no way affects the validity of the gift. In *Crane* v. *Reardon*, 217 Cal. 531 [20 Pac. (2d) 49], it was said, "The evidence fairly considered points to the conclusion that the donor intended to part with title at the time of manual delivery and his expressed desire to 'sign it over' was simply for the purpose of facilitating the transfer making it possible for the donee to have the same entered on the books of the corporation."

■ Assuming, as appellant does, that the language used by Schmidt was ambiguous, and that some extrinsic evidence was necessary to clarify his intention, such is found in the relationship of plaintiff and the deceased; the proposals of

marriage, the declaration of affection by donor, statements that he intended to give her his property and that she would not have to work, the absence of an immediate family or close relatives of Schmidt who might otherwise be natural objects of his bounty, his illness, all have force in explaining the acts of the donor, even if his words could be considered ambiguous. Furthermore, the intent with which an act is done is a question of fact to be determined from all the evidence in the case and a finding thereon by the trial court will not be disturbed. (*Mutual Benefit etc. Co.* v. *Clark*, 81 Cal. App. 546 [254 Pac. 306]; *Union Mutual etc. Co.* v. *Broderick*, 196 Cal. 497 [238 Pac. 1034].) So, also, do we find some support for the claim of plaintiff that it was the intention of Schmidt then to make an immediate gift of the contents of the deposit box to her in the fact that at that time he did not direct her to pay his hotel and hospital bills out of any funds in the box, but had a clerk from a different bank call and make out a check for the $175 necessary to care for his expenses.

■ Appellant contends that plaintiff has failed to establish delivery. We are here dealing with personal property locked in a deposit box. The box was not capable of manual delivery, therefore, the well-recognized rule that a valid gift may be made under such circumstances by the transfer of the key thereto is applicable. (*Estate of Escolle*, 134 Cal. App. 473 [25 Pac. (2d) 860].) Nor can any rule or regulation of the depository affect the validity of the gift to plaintiff. (*Donovan* v. *Hibernia Sav. & Loan Soc., supra*.) The court found that the sole means of access to the deposit box was one key which was in the possession of Schmidt; that during his last illness he handed over to plaintiff this key and at the time stated to her that he was thereby making a gift to her of all the contents of the box. With the evidence in the record supporting the finding, there can be no question as to the divestiture of dominion. Appellant makes some point of a second key. This key, however, was locked in the box and was accessible to the one alone who had control of the Schmidt key. This second key may, therefore, be dismissed from consideration.

■ Lastly, appellant claims that because plaintiff did not exercise her authority by using the key and taking possession of the property before the death of Schmidt the gift

never became effective and failed for lack of acceptance. In *Wilson* v. *Crocker First Nat. Bank,* 12 Cal. App. (2d) 627 [55 Pac. (2d) 1208], it was contended but unsuccessfully that because a donee had not assumed dominion and withdrawn money from the bank prior to the death of the donor the gift was incomplete. In *Paddock* v. *Fonner,* 84 Cal. App. 652 [258 Pac. 423], although the gift failed because of lack of donative intent, the court held that the acceptance was sufficient if the donee received the bank book and order and took into his possession the means of obtaining the funds on deposit; and that he later offered to turn over to the administratrix of the estate the bank book for the purpose of adjudication of a dispute did not affect the validity of the gift as far as acceptance was concerned. To the same effect was the holding in *Estate of Elliott,* 312 Pa. 493 [167 Atl. 289, 90 A. L. R. 360], where the donee turned over the keys of the deposit box to the administratrix prior to suit.

This cause has been very fully and diligently presented. All the points presented by appellant have not been commented upon, as what we have said makes further discussion unnecessary. The motion to recall the writ of *supersedeas,* having now become *functus officio,* is dismissed. The judgment should be affirmed and it is so ordered.

Curtis, J., Edmonds, J., Shenk, J., Knight, J., *pro tem.,* and Spence, J., *pro tem.,* concurred.

Rehearing denied.