J. G. CLIFT, Special Administrator With Copy of Will Annexed of the Estate of J. T. Grooms, Deceased, Plaintiff in Error,

v.

Mae (or May) GROOMS, Defendant in Error.

No. 38180.

Supreme Court of Oklahoma.

Oct. 21, 1958.

J. P. Speer, Comanche, Jerome Sullivan, Duncan, for plaintiff in error.

C. D. Cund, Wm. O. Leach, Duncan, for defendant in error.

BLACKBIRD, Justice.

This action is the result of a controversy related to the estate of J. T. Grooms, hereinafter referred to as the testator. At the time of his death, in April, 1954, the testator had been a resident of Duncan many years and left surviving him as his sole and only heirs, his third wife, May, or Mae, Grooms, whom he married in January, 1928, and Darrell Grooms and Lorene Grobe, a son and daughter by his first marriage. For years the testator had been in the cattle business, as well as the oil business, having at various times been president of the Trevalyn Oil Company and the Midco Service Corporation, respectively, and, in addition to his home in Duncan, owned rather extensive holdings in other property.

Before executing his will, the testator deeded the home and certain rural real estate to May.

The testator's will contained a bequest of his automobile to May, a devise of a certain undivided mineral interest to his above named children, and a further provision leaving "All the rest and residue" of his estate "of every kind and wherever situated" in proportions of one-half to May and the other one-half to the two children, jointly.

The will made no mention of certain bank deposits, shares of stock in a building and loan company, and promissory notes around which the present controversy revolves. These parcels of personal property will be referred to by lettered "Items" (adopting a combination of the lettering used in the trial court and in defendant in error's brief) which may be described as follows:

Item Ac: Money on deposit in the Security National Bank in the name of "J. T. or Mae Grooms"..........$16,243.47

Item Bj: Money on deposit in the First National Bank in the name of "May Grooms or J. T. Grooms"..........$5,361.74

Item Ca: Money on deposit in the First National Bank in the name of "J. T. or May Grooms"................:......$6,319.89

Item Di: Money on deposit in the Oklahoma National Bank in the name of "May Grooms or J. T. Grooms"........$1,022.37

Item Eb: Money on deposit in the Oklahoma National Bank in the name of "J. T. or May Grooms".:..........$8,598.68

Item Fe: Stock certificate No. 704, for 50 shares of the capital stock of Duncan Building & Loan Association, in the name of "J. T. or May Grooms"..................$5,000.00

Item Gf: Stock certificate No. 832, for 50 shares of the capital stock of the Duncan Building & Loan Association, issued to "J. T. and/or May Grooms as joint tenants and not as tenants in common with the rights of survivorship in the whole estate".......$5,000.00

Item Hg: A. L. Fearnow promissory note payable to "J. T. Grooms or May Grooms"....$7,500.00

Item Ih: Stanley and Carl Carter note payable to "J. T. and May Grooms"..........$7,500.00

Whether or not any part of the above described items Ac to Ih, both inclusive, is a part of the testator's estate so as to descend to all of his heirs under the above mentioned residuary provision of his will, or whether it belongs to his widow, May, as a surviving joint tenant, was the general issue to be determined in the district court action out of which this appeal arose. The action was instituted by the plaintiff in error, as plaintiff, against the defendant in error, as defendant, after she, as executrix, had refused to include said items of personal property in her inventory of the estate.

Our further reference to the parties will be by their trial court designations of "plaintiff" and "defendant."

Before the cause came on for trial, plaintiff filed a written demand that it be tried by a jury, which said demand was denied. After the cause had been tried to the court, the case was taken under advisement, and thereafter judgment was rendered for the defendant pursuant to written findings of fact and conclusions of law filed therein. After the overruling of his motion for new trial, plaintiff perfected the present appeal.

Plaintiff's argument for reversal is set forth in his brief under two principal propositions. Under the first, he complains of the trial court's alleged error in denying his demand for a jury trial. Under the second, he attempts to show that said court's findings and judgment as to most of the "Items" of personal property here in-

volved, were "contrary to the law and the evidence."

We will deal first with the argument under the second of these propositions. The argument under one of this proposition's sub-headings deals with Items Hg and Ih, supra, which plaintiff refers to as the "Fearnow note" and the "Carter note." As to the Fearnow note, plaintiff refers to evidence indicating that the words "or May Grooms" were written into the blank space provided on said note for the name of the payee, as well as in the blank for the name of the mortgagee in the mortgage securing said note's payment, after said note and mortgage were originally drawn up with only the name: "J. T. Grooms" in those spaces. At the trial plaintiff sought, but was unsuccessful in his effort, to adduce proof that this change in the note and mortgage was made *after* they were executed. The only direct evidence on this point, (as distinguished from the question as to whether the additions were made with a different typewriter) was the testimony of Mr. Haraway, who acted as the draftsman of the two instruments. According to his undisputed testimony (upon which the trial judge's finding on the matter was specifically based) the changes or additions were made *before* the note and mortgage were executed. The rest of plaintiff's argument as to Items Hg and Ih will hereinafter be considered in connection with our discussion of the law of the case.

Under the sub-heading in plaintiff's brief dealing with the building and loan stock certificates, Items Fe and Gf, supra, plaintiff's counsel quotes a portion of the testimony of Mr. Moseley, Secretary of the Duncan Building & Loan Association, in which he stated in substance, that it was said Association's "usual practice to require a signature card" at the time of the making of deposits entitling depositors to membership certificates in said Association. And, counsel further refers to what appears to be a rule or regulation of said Association printed on the bottom of the signature card introduced in evidence in connection with Stock Certificates No. 704 and 832. Said printing is as follows: "The names on any membership certificate must be followed by the words 'as joint tenants with right of survivorship and not as tenants in common'." Counsel recognizes that "there was an attempt to make out" Certificate No. 832 "as required by the signature card in the names of both" the testator and his wife "as joint tenants * *". They contend, however, that said certificate shows on its face that it "has been tampered with, or altered * * * and was not originally executed * * * in the manner it now shows." They make the further statement that said certificate had no relation to the signature card. Counsel's first statement evidently refers to the indication in some of the evidence that this certificate was originally executed to a couple named "Brown", and neither of these statements demonstrates any error in the trial court's finding and judgment as to said certificate.

As to certificate No. 704, plaintiff's counsel calls attention to the fact that it was made out to "J. T. or May Grooms, and that nowhere on it appears the words "as joint tenants with right of survivorship and not as tenants in common." They allude to the fact that the building and loan association had only the one signature card, above referred to (rather than having one for each of the two stock certificates) and that said card was not dated so as to show when it was signed, and delivered to the association, or whether it was signed by both testator and his wife at the same time. They also refer to the testimony of Mr. Moseley, showing that he himself wrote on said card the notation "704 and 832 combined"; and, on the basis of this testimony, infer that the signature card was wholly insufficient to support the trial court's finding of defendant's joint survivorship rights in said certificate. In view of the trial court's finding that the testator and defendant intended that "stock certificate Number 704 * * * be held in joint tenancy, with rights of survivorship", and the testimony of Mr. Moseley that the signature card had "nothing to do with",

the matter and was only for his association's information, plaintiff's argument shows no error in the trial court's judgment, if its finding as to the Grooms' intention was sufficient to sustain it—a matter we will deal with later in the opinion.

The first part of plaintiff's argument, under his second proposition, deals with Item Ac, supra. The evidence reveals that this bank account was originally in the name of the testator and in June, 1949, was changed from his name "J. T. Grooms" to "J. T. Grooms or Mae Grooms." Plaintiff points out that, as far as the evidence shows, no signature card or other *written* authority was ever given the bank for making said change. Under the findings and conclusions of the trial court, however, such written authority was unnecessary, since, according to the undisputed testimony of the bank's vice-president, Mr. Haraway, the testator orally requested the bank to make such change, and, on the basis of the evidence, it was the testator's intention to "create a survivorship with the survivor to take the entire account upon the death of the other joint tenant." Before passing to plaintiff's argument concerning the other bank accounts, it is sufficient to say that if the trial court's findings and conclusions are in accord with the pertinent evidence as to such intention of the testator, then, under the authorities we deem controlling (hereafter referred to) the fact that the deposits the testator made after the change in the account were accompanied by deposit slips bearing only his name, or the further fact that the deposit slips accompanying 50 deposits defendant made to the same account, after said change, were "headed" the same way (both of which facts plaintiff says the evidence shows) would furnish no cause for setting aside, or modifying, the trial court's judgment.

The plaintiff's last sub-heading under his Second Proposition mentions only the bank accounts hereinbefore designated Items Bi and Bj, but in the course of the argument thereunder, which may be called the "law part" of his brief, reference is made, at one place or another, to all of the other hereinbefore described items of personal property, except the two promissory notes hereinbefore dealt with. Said argument seems to revolve around two principle propositions, which may be stated as follows: (1) In Oklahoma, since the enactment in 1945 of Tit. 60 O.S.1951 § 74, a joint tenancy with rights of survivorship cannot be created without a "joint title created by a single instrument"—and, in this case, there was no proof of any such "instrument"; (2) If such a tenancy with rights of survivorship can be created, in a case like the present one, without such an instrument, this can only be accomplished by a gift, in which case there must be proved not only an intention on the part of the donor to give the donee property which has previously been exclusively his or hers, but it must also be established that it was the donor's intention in making the gift, that after the death of either of the two tenants, the survivor should own the whole property, or entire subject of the gift or donation.

Plaintiff is incorrect in his position (pertaining to the first of the foregoing propositions) that because the evidence failed to show a declaration, in a written instrument, over the signature of both the testator and his defendant wife, expressly purporting to create a joint tenancy with rights of survivorship, the trial court's judgment that the bank accounts and building loan stock had (for varying periods before the testator's death) been owned in that manner, was contrary to law and to the evidence. The trial court held, in effect, that proof of their execution of written instruments, such as contemplated in sec. 74, supra, was not necessary to their owning such property as such tenants. As defendant points out, a husband and wife's holding of property in joint tenancy is provided for by Tit. 32 O.S.1951 § 8; such tenancy is not dependent for its existence on the subsequently enacted sec. 74, supra; and can be created, in personal property such as involved here, without execution of an instrument such as is described in the latter statute. In this con-

nection, see In re Pugh's Estate, Okl., 281 P.2d 937, 940, and Kilgore v. Parrott, 197 Okl. 77, 168 P.2d 886, 888.

The authorities quoted in the latter part of plaintiff's brief, relating to the second proposition formulated above, seem to recognize this, in what they say to the effect that the intention of the parties is the important consideration in determining whether they own such property as joint tenants. Plaintiff argues, however, that the evidence does not support the trial court's finding and judgment on that subject. In finding, in material substance, that income earned by the defendant and/or her property, as well as that earned by the testator and his property, contributed to the accumulation of the items of property here involved, the trial judge expressly and necessarily recognized that each of said individuals held some property in their separate names. Recognizing that the derivative source of funds going into claimed joint accounts has often been regarded by the courts as an important factor (to be taken into consideration with other facts and circumstances) in determining the character of such accounts (see the "basic difference" spoken of in Green v. Comer, 193 Okl. 133, 141 P.2d 258, 260, 261, between that case and Royston v. Besett, 183 Okl. 643, 83 P.2d 874) and citing authorities to the effect that money belonging to one person may be "deposited to the credit of himself and another" merely for the convenience of withdrawals and without any intention of creating a joint tenancy with survivorship rights (7 Am.Jur., Banks, sec. 426) plaintiff's counsel seek to employ, to his advantage, the above described finding of the trial court by opining, that some of the joint accounts involved here were really the testator's, and others were really the defendant's, but each allowed the other to check on all of them purely as a matter of convenience. Consistent with this theory, plaintiff's counsel indicate they would apply specifically to the bank accounts designated as Items Bj and Di, supra, the trial court's above described general, unspecific recognition that the testator and defendant owned some separate property. Under their theory, all of the other bank accounts, comprising most of the cash involved herein, would be regarded as testate estate and held (contrary to the trial court's judgment) to have descended under the residuary provision of his will. We cannot concur in such a view. In our opinion, plaintiff's counsel demonstrate neither in the factual distinctions they point out between this case and Royston v. Besett, supra, nor in any of the rest of their argument, any material error of the trial court in its application to this case of the same principles that were applied there in determining the existence of joint ownership with survivorship rights.

As hereinbefore indicated, both parties in this part of their argument, seem to concede that where there is no writing that is conclusive as to whether a bank account in the name of two parties belongs to only one of them or is held by both as a tenancy in common, or as a joint tenancy with rights of survivorship in each, the intention of the parties creating it or in changing the account from one type to the other, is controlling. The apparent conflict in the authorities they cite extends only to the presumption to be judicially indulged in adjudging the evidence of such intention. Some of defendant's authorities appear to hold that in the case of joint accounts tenanted by husband and wife, the presumption of intention to make a gift may be indulged from the fact of its creation or establishment—thus rendering unnecessary any other proof as to such intention. Some of the authorities cited by plaintiff apparently do not recognize any such presumption. We need not be concerned here, however, with any such diversity of opinion, for we think, after carefully examining the evidence, both direct and circumstantial, all of it possessing any probative value on the subject supports the trial court's conclusion that all of the bank accounts involved were intended to be joint accounts with rights of survivorship in both the defendant and testator. Plaintiff points out no single fact which

affirmatively establishes an intention to the contrary. All he relies upon is negative—things that were not done. For instance, at one place in his brief his counsel argues that since the testator's will did not name just the defendant as the sole beneficiary of its residuary provision (instead of including Darrell and Lorene with her therein) this must be taken as conclusive evidence that he never intended to create a joint tenancy under which she would become the owner of all of it at his death. This argument is unsound not only as a matter of pure logic but it is especially so in view of the evidence in this case, and the fact that it is not claimed that these bank accounts, notes and building and loan stock certificates comprised the only field of the residue provision's operation.

■ This brings us to plaintiff's first proposition under which he argues that the trial court erred in denying his demand for a jury trial. Defendant denies this was error on the theory that the cause was one of equitable cognizance, and indeed the allegations of plaintiff's petition do read much like those in an action to quiet title. Plaintiff's counsel argue that this case is an action for the "recovery of money, or of specific * * * personal property * *" in which such actions, Tit. 12 O.S.1951 § 556, requires issues of fact to be tried by a jury unless such trial is "waived, or a reference be ordered." Assuming arguendo the correctness of plaintiff's contention that the character of the action brings it within the orbit of the cited statute's operation and that the intention of a husband and wife in placing money and personal property like that involved here in both their names is a question of fact, or a mixed question of law and fact, where such issue is joined (Fouts v. Nance, 55 Okl. 266, 155 P. 610, 614, L.R.A.1916E 283; Morlan v. Durland Trust Co., 127 Colo. 5, 252 P.2d 98, 36 A.L.R.2d 874; Braun v. Brown, 14 Cal.2d 346, 94 P.2d 348, 127 A.L.R. 773; Donovan v. Hibernia Savings & Loan Soc., 90 Cal.App. 489, 265 P. 995; Mellor v. Bank of Willows, 173 Cal. 454, 160 P. 567; 38 C.J.S. Gifts § 119; Am.Jur.,

Vol. 24, "Gifts", sec. 134, Vol. 53, "Trial", secs. 218 and 219, Note 8) here no such issue was joined. There is no conflict in the evidence on the subject of such parties' intention in this case. There being no evidence, either direct or circumstantial, to affirmatively dispute the convincing proof that it was the intention of the testator and the defendant that the property here involved was to be owned by them jointly with mutual and co-equal rights of survivorship, and there being no valid basis for disagreement about the matter by reasonable minds, there was no issue presented that required determination by a jury. We therefore hold that the trial court's alleged error in refusing plaintiff's demand for a jury trial constitutes no cause for reversal.

As we have found no cause for reversing the trial court's judgment in any of the alleged errors presented by plaintiff, said judgment is hereby affirmed.

CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.