### HICKMAN, Ex'r, v. BARRETT.

No. 24488.    Oct. 8, 1935.

Rehearing Denied Dec. 10, 1935.

E. E. Gore and Guy P. Horton, for plaintiff in error.

Frank Petree and L. A. Pelley, for defendant in error.

PHELPS, J. The main question in this case is whether the holder of a bank deposit certificate, payable to himself or the owner of the deposited funds, or to both of them, may, after the death of the owner of the funds, cash the certificate at the bank and retain the proceeds as his own property,— or whether, on the other hand, the money so withdrawn from the bank remains the property of the deceased's estate.

Several years prior to his death on January, 1, 1929, Charles Munsell was ill and confined to the home of his son-in-law, F. E. Barrett, who transacted all of his business for him, including the writing and cashing of checks and the representing of Munsell at the bank. Prior to July 3, 1928, Munsell had on deposit in the bank the sum of $7,000, drawing interest at 4 per cent. and evidenced by a certificate of deposit, payable to himself. The money represented thereby was drawn out of the bank on July 3, 1928, and whether it was drawn by Munsell or Barrett is uncertain from the record. On July 5, 1928, the bank, apparently in renewal of the old certificate, issued the certificate of deposit which is the subject-matter of this lawsuit. This certificate recited that Charles Munsell had deposited in the Altus National Bank the sum of $7,000,

"Payable to the order of himself or F. E. Barrett, both or either of them, in current funds on return of this certificate properly indorsed with interest payable at the rate of 4 per cent. per annum."

It appears that from approximately the date of the issuance of this certificate until three days after the death of Munsell, it was in the possession of Barrett. On January 3, 1929, after the death of Munsell, Barrett appeared at the bank, indorsed the certificate by writing thereon "Charley Munsell by F. E. Barrett," and withdrew the sum of $7,140, representing principal and interest. Barrett retained the entire sum for himself and never turned any part thereof to the executor of the estate of Charles Munsell, deceased.

The executor discovered this transaction and included a report of it in a supplemental inventory which he filed in the probate court. The executor also mentioned the transaction in his final account. In the order of distribution and final decree entered by the county court, that court stated that Barrett claimed the $7,000 as his own property and that it was also claimed by two assignees of certain heirs of Munsell, the latter claiming title thereto on the theory that title had never vested in Barrett and that the $7,000 was a part of the assets of the estate. The county court further stated, in that order, that it made no finding or order as to the ownership of the money, but that the executor was thereby directed to bring suit against Barrett for the $7,000, and that if in that suit it should be determined that the money belonged to the estate, then upon recovery it would be delivered to the two named assignees.

Subsequently the executor brought suit in the district court against Barrett. It was tried before a jury and resulted in a verdict and judgment for the defendant. The ex-

ecutor, who was plaintiff below, is plaintiff in error here, and all of his propositions may be resolved into the assertion that, accepting all of the evidence in its aspect most favorable to the defendant, plaintiff was entitled to an instructed verdict in his favor, as a matter of law. After considerable study, research, and review of the authorities we are impelled to the same conclusion.

We have carefully read the entire record in an effort to find some competent evidence justifying the action of the trial court in permitting the question to go to the jury on the theory of a gift inter vivos, under which theory defendant claimed title. Excluding the offered testimony of Barrett as to his transactions with the deceased, which offers were correctly refused by the trial court under the provisions of section 271, O. S. 1931, we find the record totally devoid of any evidence that Munsell, during his lifetime, ever expressed or manifested any intention to give to Barrett the $7,000 evidenced by the certificate. It is fundamental that delivery and intent to give are absolute essentials to a gift inter vivos. Sauls v. Whitman, 171 Okla. 113, 42 P. (2d) 275. Other than the mere possession of the certificate itself (which is not enough, as will hereinafter be seen), there is no evidence of delivery at all. As for the necessary proof of intent to give, the record is silent, —and any finding that Munsell intended to vest title to the funds in Barrett must be the product solely and only of speculation and conjecture.

Even the fact of delivery, if it were in evidence, would be as consistent with the hypothesis that such delivery was to Barrett only as agent of Munsell, as it is to the hypothesis that the delivery was to Barrett as donee. This is further strengthened by the fact that when Barrett cashed the certificate, after Munsell's death, it is apparent that he did so as agent, and not as owner of the fund, for it was indorsed "Charley Munsell, by F. E. Barrett." It is evident that there can be no agent without a principal, and that upon the death of Munsell Barrett's agency ended.

In has long been the law that in order to constitute a valid gift inter vivos the donor must part with dominion over the donated property. If he reserves the right to recall, there is no valid gift. The certificate stated on its face that the money belonged to Charles Munsell, and that it was to be payable to him, or to Barrett, or to both. If we accept the statement on the

certificate as evidence of the extent of Barrett's right to claim possession of the fund (and it is nothing more), it does not exclude Munsell's ownership thereof. Upon what theory, then, could it be said that the mere possession of the slip by Barrett evidenced a transfer of the property? It would be peculiar reasoning indeed to say that Munsell gave the money to Barrett, and at the same time reserved the right to recall it. In view of the relationship of the parties, as principal and agent, it cannot be said that Barrett could have laid claim to the money as his own, instead of as agent, even had he withdrawn it before the death of Munsell.

In the Utah case of Holman v. Deseret Savings Bank, 124 P. 765, it was held that a deposit in the names of two persons would not vest title to any of the money in the person in the situation that Barrett holds in the instant case, and where the depositor who had owned the money died, the other was precluded from asserting any ownership in the fund, "it not being plain that the deposit was not made in that form as a matter of business convenience." There is more room in the present case for the inference that the certificate was made in this form as a matter of business convenience than there is for the conjecture that it evidenced a gift. In fact, it negatives the idea of a gift, for in it there is the power to recall.

A similar situation in the New York case of In re Bolin, 32 N. E. 626, was described as

"perfectly consistent with the motive of convenience, and the evidence that the daughter had the custody of everything belonging to her mother detracts from the argument that the continued possession of the pass book tended to prove a gift, or the intention to make a gift. * * * There were no words of gift, and the receipt and holding of the pass book were consistent with a mere custody or agency. The law never presumes a gift. * * * The evidence must show that the donor intended to divest herself of the possession of her property. * * *"

" 'The following is from Denigan v. San Francisco Savings Union (Cal.) 59 P. 390, quoting from another case (Taylor v. Henry, 48 Md. 550, 30 Am. Rep. 486) :

" 'Having thus retained the power to draw out the money, the deceased did not divest himself of dominion and control over the fund. He could have drawn out every dollar after the deposit, or at any time up to the moment of his death, and applied it in any manner he might have thought proper. It is not contended that the sister had

the least right or interest in the money before the deposit; nor is it contended that she acquired any interest therein otherwise than by the supposed gift of the brother; and the only evidence relied on to support the factum of the supposed gift is the form of the entry in the bank book. But, as will be observed, there are no terms in the entry that import of themselves an actual present donation by the brother to the sister and the dominion retained by the brother over the fund enabled him to displace and utterly destroy all power conferred upon the sister in respect to the fund.' * * * The words, 'payable to either,' placed in the account take away the claim of a joint interest."

The fact situation which we have here has arisen many times and the courts uniformly hold that possession of such a certificate does not entitle the holder to the funds after the death of the original owner,—and the same result is usually reached even where the parties have unequivocally made it a joint account. Hudson v. Bradley (Ark.) 4 S. W. (2d) 534; Meyers v. Albert et al. (Wash.) 135 P. 1003; Holman v. Deseret Savings Bank (Utah) 124 P. 765; Wolfe v. Hoefke (Wash.) 214 P. 1047; Daly v. Pacific Savings & Loan Ass'n (Wash.) 282 P. 60; Roeser v. Ryckman (Minn.) 140 N. W. 126; Drinkhouse v. German Savings & Loan Ass'n (Cal. App.) 118 P. 953; Carr v. Carr (Cal. App.) 115 P. 261; Jones v. Fullbright (N. C.) 148 S. E. 229; Gerry v. Gerry (Wash.) 238 P. 5.

To permit the evidence in this case to be announced sufficient to satisfy the requirements of gifts inter vivos would be to do violence to the principles of law announced in virtually all of the many cases where this question has arisen. The essential element of delivery is not sufficiently established by the evidence, and Barrett's possession of the certificate was nothing and could be deemed nothing, under the meager evidence in the case, but the possession of an agent. To transform that possession into the possession of ownership there must be evidence that Munsell intended to and did part with title, and irrevocably vest that title in Barrett. There is no such evidence in the record.

The law never presumes a gift, and this is especially true where the one who is claiming as donee occupied a fiduciary or confidential relationship to the deceased, and nurses and agents come within the classification. See Atchley v. Rimmer (Tenn.) 255 S. W. 366, 30 A. L. R. 1481; Weitz v. Moulden, 109 Okla. 119, 234 P. 583. We held in the latter case that after the death of an alleged donor, in order to establish a

gift inter vivos, the evidence must be clear, explicit, and convincing in support of every element necessary to constitute a valid gift. In the instant case, instead of having such evidence, we have virtually no evidence at all.

In answering the argument of plaintiff the defendant urges that the executor had been finally discharged as such, by the county court, prior to the filing of this action, and that therefore he had no legal capacity to sue. After the executor filed his final account and petition for discharge the county court, in its final decree, recited the existence of this controversy between Barrett and the assignees, ordered the executor to bring suit against Barrett for the proceeds of the deposit, and discharged him from

"further duties in this cause, other than bringing said suit for said $7,000 and interest, as herein directed, and making bond in event the same shall be brought at the request of said distributees."

In the same order the court also discharged the executor's surety from further liability, but required the executor to post bond in the county court in the sum of $7,000, covering his activities in the instant case.

This was not a final discharge, such as to preclude maintenance of this action by the executor. In fact, it ordered the executor to continue as such executor for the limited purpose delineated in the order, and required the posting of bond therefor. The courts are very reluctant to announce that the administrator or executor is without further official power so long as there is anything remaining to be done for the benefit of the estate. 23 C. J. 1094. Woerner, American Law of Administration (2nd Ed.) vol. 2, sec. 571: Hazlett v. Blakely (Neb.) 97 N. W. 808. In the Ohio case of Weyer v. Watt, 48 N. E. 670, it was held that the executor of an estate could maintain an action against the maker of a promissory note, although the probate court prior to that time had discharged him; this was on the theory that the court had no power or authority to discharge him until the affairs of the estate were completely administered. It is not necessary for us to go that far,—for here we have no final discharge.

The defendant further contends that the distributees failed to file a claim with the executor within the period prescribed by law, and are thus barred. This contention overlooks the fact that this is not a claim against the estate, but is a claim by the

estate, for money properly constituting a part of the estate. The fact that the distributees who are to receive this fund have already been named by the county court does not, as contended by defendant, constitute them the real parties in interest to such a degree and extent that they should have been included as parties plaintiff. It was entirely right and proper that the executor bring the action; they could derive no interest or title in the fund except through the probate court, and through the executor. Too, it was within the power of the county court to require the executor to obtain the money for the distributees, rather than require the distributees to maintain the action themselves.

This action was instituted under section 1219, O. S. 1931, prescribing recovery by the executor of double damages against persons alienating the effects of a decedent, and the parties prayed for the recovery of such double damages. However, the executor and the distributees seem to have abandoned their original intention in this respect, and have proceeded on the theory that they ask recovery of the principal and interest only, instead of double the amount. Such being their present prayer, we are not disposed to increase it. However, since the evidence indicates liability as a matter of law, even when said evidence is construed most strongly in favor of defendant, and further in view of the fact that since the filing of this appeal the defendant has died and the cause been revived against his administrator, we feel it proper to order such judgment in this case as should have been rendered by the trial court. Accordingly, the judgment is reversed and remanded, with directions to the trial court to enter judgment for the plaintiff, and against the administrator of the estate of F. E. Barrett, deceased, in the sum of $7,140, being the amount withdrawn from the bank, together with interest thereon at the rate of 6 per centum per annum from January 3, 1929, until paid.

McNEILL, C. J., and BAYLESS, WELCH, and GIBSON, JJ., concur.