**ROYSTON et al. v. BESETT et al.**

No. 27550.   Nov. 1, 1938.

Glass & Chappell, for plaintiffs in error.

Campbell & Ray, for defendants in error.

PHELPS, J. William Royston and Gertrude Royston, husband and wife, died testate without issue, in Washington county, Okla., on April 20, and April 24, 1934, respectively. The will of William Royston was deposited with the county court but was never probated. The will of Gertrude Royston was offered for probate and the defendants in error were appointed administrators with will annexed. Thereafter the administrators filed their final account and report and petition for distribution; praying that the estate be distributed to named sisters and brothers of the deceased, as her sole and only heirs.

Plaintiffs in error filed written objections to distribution and asserted ownership to one-half of the property left by the deceased, under the provisions of section 1617, O. S. 1931, 84 Okla. St. Ann. sec. 213, governing descent and distribution.

Upon trial of the issues thus presented, the county court found in favor of the defendants in error, and the plaintiffs in error appealed to the district court of Washington county, where the case was tried de novo resulting in a judgment for defendants in error. From this judgment plaintiffs in error appeal to this court, assigning seven errors, the principal one being that the findings, judgment, and decree of the court were contrary to the law and evidence. The facts disclosed that William Royston and Gertrude Royston resided together as husband and wife in Washington county, Okla., until the death of the husband on April 20, 1934; that the husband was employed in the oil field and produced and earned most, if not practically all, of the cash income of the family; that Gertrude Royston performed the general duties of a housewife for the husband and that the property involved was accumulated by the joint industry of the husband and wife. That William Royston left a will by the terms of which, after the payment of all debts and funeral expenses, his then wife, Gertrude Royston, was given and devised all of his property, including both personal and real, except that he gave and devised therein the sum of $1 each to his mother, two sisters, and three brothers; that the mother, Emily Royston, predeceased William Royston, and that said sisters and brothers survived him, and with the exception of Bob Royston, are now living; and that said will was never offered for probate. That said will was deposited with the county judge of said Washington county, Okla., on May 7, 1934, and is still on deposit in that office.

That the next of kin of said William Royston now are the following named brothers and sisters, to wit: Richard Royston, Emmett Royston, Anna L. Fields, and Ella C. Roberts.

That the next of kin of said Gertrude Royston are the following: Emory Justus, Lillie Barton, Lena Neff, and Mary Cockriel, brothers and sisters.

The judgments of the trial courts are based upon the theory that the deceased husband and wife had, during their lifetime, held their property by contractual arrangement, whereby any and all property owned by either passed to the survivor; that the wife, Gertrude Royston, having survived her husband, all of the property of the decedents, jointly acquired or otherwise, passed to her heirs.

It appears that at the time of their death decedents held certificates of stock in certain building and loan associations, a deposit in the First National Bank of Bartlesville amounting to $740.63, and that title to certain real estate valued at $700 had, for a long time prior to her death, been vested in Gertrude Royston. We shall consider the various properties separately. The deposit in the bank was carried in the names of "Gertrude or William Royston." Whether regulated by statute or otherwise, it is now quite universally recognized that bank accounts may be so fixed that two persons shall be joint owners thereof during their lifetime and the survivor take on the death of the other. Michie on Banks and Banking, vol. 5, page 100. In the present case neither the husband nor the wife retained title to the money deposited; the title having immediately passed to the bank; thus creating the relationship of debtor and creditor between the bank and the depositors; and, under the agreement of the parties, both husband and wife were permitted to draw against the amount on deposit; even to exhausting it. Manifestly, there was a joint ownership in this account, and under the circumstances there was a joint ownership with the right of survivorship. In 3 R. C. L., page 527, the law on this question is thus stated:

"It is well established that a bank account may be so fixed that two persons shall be joint owners thereof during their mutual lives, and the survivor take the whole on the death of the other. In creating a joint bank account with right of survivorship, it is a matter of no importance that the particular terms 'joint ownership' and 'joint account' are not used; the controlling question is whether the person opening the account intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship. No particular formula is required, and courts will be controlled by the substance of the transaction rather than by the name given it."

The controlling question is the intention of the parties making the deposit and not its mere form. Michie on Banks and Banking, vol. 5, page 101. The fact that the deposit in the present case was general, and not special, and was entered upon the books of the bank in the commercial rather than the savings department, it follows that no additional recitation was necessary to authorize withdrawals by either the husband or wife. In the absence of any additional writing clearly disclosing the intention of the parties, such intention was open to inquiry and to be determined by the trial court from all the facts connected with the financial arrangements of the parties. Such additional facts are available in the present case. In the agreement of the parties we find:

"It is further stipulated and agreed, that Certificate No. 02426 for $2,500.00 was issued on October 1, 1924 by Home Savings and Loan Association of Bartlesville to Mrs. Gertrude Royston with the notation 'allow Wm. Royston to withdraw upon letter of authority.'

"That on January 5, 1925, the certificate was cancelled and transferred to Certificate No. 02679 for $2,500.00 to Mrs. Gertrude Royston.

"That on January 8, 1926, the certificate was divided and Certificate No. 02710 for $1,500.00 and Certificate No. 02711 for $1,000.00 was issued by said Home Savings and Loan Association of Bartlesville to 'Mrs. Gertrude Royston or Wm. Royston.'

"That on January 5, 1925, Certificate No. 03442 was issued by said Home Savings and Loan Association of Bartlesville to 'Wm. Royston or Gertrude Royston.' * * *

"That the shares of stock in the Home Building and Loan Association of Tulsa, Oklahoma, evidenced by Certificate No. 8513 for $3,110.27 was issued to:

" 'Mr. and Mrs. Wm. Royston,—on the death of one the survivor to take the entire interest in said share of stock and become the absolute owner thereof.' "

The mutual operations of husband and wife, in which their investments in building and loan associations were made in such a manner as to create joint ownership, are in themselves strong evidence of their desire to establish a right of survivorship. That there is some difference in the wording on the various certificates is wholly immaterial in the face of the apparent intention of the investors; presumably the terms of payment were placed upon the certificates by the officers of the association. That terms more explicit might have been used is not conclusive argument against the manifest intention of the investors. The right of married women to own stock in building and loan associations is specifically authorized by the laws of this state. Section 9824, O. S. 1931, 18 Okla. St. Ann. sec. 235. The character of the investment does not change the rules of law applicable to the facts in the present case. In reality the terms used in the investments and the provisions relative to payment of the certificates amplify the intention of the parties in making the deposit in the bank. The "gift theory" discussed by plaintiffs in error is not controlling in the present case, and is incidental only in so far as it relates to the creation of joint deposits or investments of individual or community personal property of the husband and wife:

"Where one deposits money in the name of herself and another, * * * the right of either does not arise by virtue of a gift theory at the time of the deposit, or at the time of the depositor's death, but is a right in a form of chose in action against the bank created by contract with the bank; and a compliance with the law relating to gifts or wills is unnecessary." (Michie on Banks and Banking, vol. 5, page 104, and cases cited.)

However, the gift theory under facts similar to the facts in the case at bar is sustained by some authorities. In the annotation in Cleveland Trust Co. v. Scobie (Ohio) 151 N. E. 373, 48 A. L. R. 200, it is said:

"But the majority of cases hold that, if the intention of the donor is to vest a present right to share in the deposit, such an act constitutes a gift that can be sustained. A present gift is held to be effected by a father depositing in bank on a certificate of deposit a fund to the account of himself and his daughter jointly, with power to either to draw on his or her individual order during their joint lives, and the balance upon the death of either, to belong to the other."

In Burns v. Nolette, 144 Atl. 847, 67 A. L. R. 1056, the Supreme Court of New Hampshire said:

"The conclusion that a transfer of equal power to draw from the fund and appropriate the money withdrawn constitutes a perfected gift is in accord with the great weight of authority," and cases cited.

The case of Denigan v. Hibernia Savings & Loan Society, 127 Cal. 137, 59 P. 389, cited by plaintiffs in error, is referred to and the distinguishing point emphasized in Columbia Trust Co. v. Anglum (Utah) 225 P. 1089, at page 1092. Therein it is said:

"The opinion in Denigan v. Hibernia Sav. & Loan Soc., 127 Cal. 137, 59 P. 389, holds that a deposit in favor of F. D. or E. D., F. D. being the husband, in the absence of any evidence of the purpose of the deposit except the form of the deposit does not indicate or support an intent to part with the title to the money so deposited. That case, however, clearly indicates that, if it had been made to appear by other evidence that such was the intent, it would have been the duty of the court to give effect to such intent."

The case of Hammond v. McCullough, 159 Cal. 639, 115 P. 216, at 220, cited by plaintiffs in error, is not controlling for the reason that in that case it is stated in the opinion:

"The facts of compelling force in support of the finding are those above adverted to; that the property was acquired by the spouses during coverture, and not by gift, devise, or descent; that Mr. Weir attended to all business and maintained to the end the absolute dominion and control of the property in all its phases; that his wife was utterly ignorant of, and unversed in business, so that she did not know the difference between a deed and a mortgage and a promissory note; that when a promissory note would be taken in the name of Mrs. Weir as payee, the money which the note represented was community money. Mr. Weir would retain possession of the note, would receive the money on account of it, and indorse the payments in his own hand. In January, 1903, Mr. Weir made and acknowledged before Mr. Mouser an instrument purporting to be a bill of sale to his wife of all the personal property owned by him at the date of the instrument, or which he might thereafter acquire. The circumstances attending the making of this bill of sale were testified to by Mr. Mouser, and his testimony has been previously quoted. The paper was given by Mrs. Weir to the defendant with other papers after Mr. Weir's death. There is no evidence of the delivery of the paper to Mrs. Weir in the lifetime of her husband, and there is the strongest inferential evidence that it was not delivered. This evidence is found both in the testimony of Mr. Mouser and from the fact that Mr. Weir after its execution retained full and complete dominion and control over all his personal property down to the very day of his death."

Unlike the facts in the above-cited case, in the present case title to the money immediately passed to the bank and the investments in building and loan stock, like the deposit, were, by agreement, made available to either the husband or wife.

"The intent of the depositors being always the controlling factor, we know of no reason why the contract of the parties should not be given full effect." In re Edwards' Estate, 140 Ore. 431, 14 P.2d 274, at 279.

Augmenting the view favoring the authority of the parties to dispose of their property by written agreement, other than by testamentary disposition, it is of primary importance that in the present case both the husband and wife left wills under which (except for minor legacies not herein material) each named the other as beneficiary. In effect, they were mutual or reciprocal wills. 28 R. C. L. 166; sec. 1543, O. S. 1931, 84 Okla. St. Ann. sec. 52. The will of William Royston was filed in the county court, but was not probated. The factum of his will is admitted, which is sufficient. Courtney et al. v. Daniel, 124 Okla. 46, 253 P. 990. On his death title to property in him (except bequests to relatives) vested immediately in his devisee, Gertrude Royston. Parks v. Lefeber, 162 Okla. 265, 20 P.2d 179, 86 A. L. R. 392. The husband, having predeceased his wife, and no intention to the contrary appearing from the will of Gertrude Royston, the testamentary disposition to William Royston (under the wife's will) failed under the provisions of section 1605, O. S. 1931, 84 Okla. St. Ann. sec. 177, which reads:

"If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute some other in his place, except as provided in section 8376 (1574)."

Inasmuch as William Royston left no lineal descendants, section 1574, O. S. 1931, does not apply. In this condition we find the general rule stated as follows:

"The general rule is that where there is no residuary clause in a will a lapsed legacy or a lapsed devise will go to those entitled to take under the intestate laws." 28 R. C. L. 340, and cases cited. 69 C J.

1067. In re Johnson's Estate (Wis.) 203 N. W. 376. In re Fratt's Estate (Mont.) 199 P. 711.

In this situation plaintiffs in error argue that the property descends and should be distributed under the terms of the proviso in subdivision 2 of section 1617, O. S 1931, 84 Okla St. Ann. sec. 213, which is as follows:

"* * * Provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivor, at whose death, if any of the said property remain, one-half of such property shall go to the heirs of the husband and one-half to the heirs of the wife, according to the right of representation."

This contention cannot be sustained under the facts presented. Ordinarily, where there is a will, none of the provisions of section 1617, supra, apply. Appeal of Sims' Estate, 162 Okla. 35, 18 P.2d 1077; Sims v. Billings, 162 Okla. 51, 18 P.2d 1084; Hicks v. Jeffress, 178 Okla 109, 61 P.2d 1079; McCormick v. Hall (Ill.) 168 N. E. 900, 66 A. L. R. 1062.

The defendants in error take under the will of Gertrude Royston and the statutes of succession and distribution are material only because of the lapse in the devise to William Royston under the provisions of his wife's will.

In this contingency the real estate goes to the heirs of the testatrix Gertrude Royston, as in case of intestacy, upon the ground that that interest had not been disposed of by the will. The same rule would apply to the personal property of the testators undisposed of under other written contractual agreements of the husband and wife during their lifetime.

Under the facts as presented, we conclude that title to the real estate involved passed as intestate property of the wife in equal shares to her brothers and sisters as provided in the third subdivision of section 1617, supra, which reads:

"If there be no issue, nor husband nor wife, nor father nor mother, then in equal shares to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation; if the deceased, being a minor, leaves no issue, the estate must go to the parents equally, if living together. if not living together, to the parent having had the care of said deceased minor."

See, also, In re Baker's Estate (Deweese v. Baker), 170 Okla. 595, 41 P.2d 640.

The judgment of the trial court is affirmed.

OSBORN, C. J., and RILEY, CORN, HURST, and DAVISON, JJ., concur. WELCH, J., concurs in conclusion. BAYLESS, V. C. J., dissents