GREEN et ux. v. COMER, Adm'r, et al.

No. 30006.   June 8, 1943.

Rehearing Denied Sept. 14, 1943.

Application for Leave to File Second Petition for Rehearing Denied Oct. 5, 1943.

*141 P. 2d 258.*

Hamilton & Kane, of Pawhuska, for plaintiffs in error.

P. D. Lindsey, of Hominy, for administrator, J. H. Comer.

Charles R. Gray and W. N. Palmer, both of Pawhuska, for interveners, Iva Belle Wiseman et al.

DAVISON, J. This cause involves a controversy among the heirs of Ella McCracken, deceased, over what may be termed two items of property. The first is a monetary item represented by bank deposits which is being claimed by Mrs. Ira Green, a sister of the deceased, and her husband, Ira Green, on the theory there had been a joint ownership of the deposit during the lifetime of the deceased, which joint ownership comprehended as an incident thereto the right of survivorship. The second item is improved real estate situated in Hominy, Osage county, Okla. The question of whether this property was owned by Ella McCracken at the time of her death on July 15, 1939, or by her sister, Mrs. Ira Green, depends upon the effectiveness of certain deeds executed prior to the death of Ella McCracken and pur-

porting on their face to operate as conveyances thereof.

The claim of Mrs. Ira Green and her husband to the items of property above mentioned is disputed by J. H. Comer, administrator of the estate of Ella McCracken, and by Iva Belle Wiseman, T. F. McCracken, B. L. McCracken, Ira McCracken, and Rodge McCracken, sister and brothers of the deceased and of the claimant, Mrs. Ira Green.

In addition to the above mentioned persons, the First National Bank of Cleveland, Okla., is named as a party to this litigation because of its possession of a draft employed to transfer a portion of the money from the bank in Oregon to Oklahoma. It claims no individual interest in the money and in a disclaimer filed by it asserts its willingness to pay the money or deliver the draft in accord with the order of the court.

The action was instituted in the district court of Osage county on August 4, 1939, by J. H. Comer, as special administrator of the estate of Ella McCracken. Later he was substituted as party plaintiff in his capacity as general administrator.

In his petition as subsequently amended he sought to recover from the Greens the monetary item above mentioned.

Mr. and Mrs. Green joined issue, claiming the money, and in addition thereto asserted their ownership of the real estate in Hominy. The other sister and the brothers of Ella McCracken intervened, by leave of court without objection, and joined the administrator in disputing the claim of their sister and brother-in-law to the money and real estate.

The issues in this appeal do not involve the sufficiency of the pleading. Thus a detailed analysis thereof in this opinion is unnecessary. The pleadings in behalf of the respective parties were adequate to frame the issues for trial and properly forecast and present for adjudication the claims of the respective parties.

The cause was tried to the court on May 14 and 15, 1940, without the intervention of a jury. The trial tribunal decided the issues generally in favor of the administrator and intervening heirs and against the individual claimants, Mr. and Mrs. Green, as to both the monetary items of property and the real estate. Judgment was rendered accordingly. Certain deductions were allowed in favor of the Greens in connection with the money.

Mr. and Mrs. Green present the cause on appeal, seeking a review and reversal of the judgment of the trial court on both phases of the controversy.

The issues involved in this appeal with reference to the two phases of the case are distinct and must be separately treated. We shall first consider the monetary item identified with the bank deposits.

As previously indicated, the Greens base their claim in connection with this item on the theory of the right of survivorship.

In connection with some of the points, the parties are not in accord as to the probative force of the evidence produced. Our consideration of the controversial features of the evidence and the details of the proof will be deferred until we review the facts in a general way, and recognize the salient features of the law applicable thereto.

The deceased, Ella McCracken, in 1936, and prior thereto, owned and operated a small rooming house in Hominy, Okla. Mr. and Mrs. Green lived at Bend, Ore., where they had resided since 1919. For a number of years prior thereto they had lived at various places in the northwestern part of the United States. The deceased had likewise lived in that section of the country during some of the time. From time to time she had lived with the Greens. At other times she visited them at intervals. Her relationship with the Greens in a financial and social way was quite close throughout the years.

In August of 1936, while visiting the Greens at Bend, Ore., Mrs. McCracken withdrew from the First National Bank of Hominy, Okla., $2,945.03 by means of a draft for that amount. On September 5, 1936, $2,844.03 of the money thus withdrawn from the Oklahoma bank was deposited in a savings account in a bank at Bend, Ore., to the credit of Mrs. Ella Corder or Elizabeth Green. Incidentally, it is appropriate to mention at this point that in her various business transactions Ella McCracken was known on occasion as Ella Corder and as Mrs. Willie E. Corder and that Mrs. Ira Green was sometimes referred to as Elizabeth Green.

Subsequently, during the lifetime of the deceased, the $2,844.03 above referred to or the unspent remainder thereof remained in banks in Oregon, generally to the credit of Ella McCracken and one or both of the Greens.

Mr. and Mrs. Green take the position that the bank account was so fixed that they and Mrs. McCracken were joint owners thereof during their mutual lives, and that as survivors they took the whole thereof on the death of Mrs. McCracken.

It is recognized in this jurisdiction that a bank account may be so arranged and handled. Royston v. Besett, 183 Okla. 643, 83 P. 2d 874. However, this court has held that the mere fact that money is deposited by one so that it can be withdrawn by himself and others is not in itself sufficient to create such a joint interest in the deposit as to comprehend the right of survivorship. Hickman v. Barrett, 175 Okla. 262, 52 P. 2d 40.

While the expressions of this court upon the right of survivorship in connection with bank deposits known as "joint deposits" which are deposited so as to be subject to withdrawal by either of two or more persons have not been numerous, they afford a general guide in the case at bar. However, no single prior decision of this court can be accurately said to definitely control the case at bar because of distinguishing characteristics herein which may, with good cause, be said to minimize the

value of the previously decided cases as judicial precedent.

In other jurisdictions, litigation upon the subject has been prolific. There is a wealth of judicial expression to be found in the decisions of other courts. Many of these decisions have been collected, classified, and ably commented upon in annotations appearing in 135 A. L. R. 993; 103 A. L. R. 1123; 66 A. L. R. 881; 48 A. L. R. 189; L. R. A. 1917C, 550; Ann. Cas. 1916D, 520. The comments of the annotator in 48 A. L. R. 189, as supplemented by the text in 7 Am. Jur. at pages 300 et seq., are helpful in determining the judicial trend.

The host of authority renders an analysis and comparison of any considerable portion of the decisions impractical. Absolute harmony among the decisions does not exist. It could not be expected. However, general trends which permeate the cases are readily apparent.

In Royston v. Besett, supra, it was said by this court that the "controlling question is the intention of the parties making the deposit and not its mere form." Similarly, in 7 Am. Jur. 300, it was stated that:

". . . The controlling question is whether the person opening the account intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship. No particular formula is required; courts are controlled by the substance of the transaction rather than by the name given it. . . ."

See, also, Kelly v. Beers, 194 N. Y. 49, 86 N.E. 980. Obviously, there is a basic difference between situations such as this case, in which the money which went into the creation of the deposit was entirely or almost entirely furnished by one party, and cases like Royston v. Besett, supra, where the parties were husband and wife and created the fund by their mutual efforts and joint industry. In the latter type of cases the vested coequal interest in the deposit is a somewhat natural sequence of the manner in which the funds deposited

were accumulated. In the former type of case, which includes the case at bar, since the money which went to make up the deposit was in the first instance the individual property of one, it is essential that the transactions involved be examined for the purpose of determining when and by what means the original owner transferred to his codepositor a sufficient interest to vest in the latter a joint interest in the deposit and confer upon him or her the right of survivorship.

In examining any case it is essential to know the nature of the transaction for which we are searching. Dealing with the method by which the transfer may be accomplished, it is said in 7 Am. Jur. 301:

". . . Apart from the contract theory, which is comparatively rare, this leaves the title of the survivor to rest upon a gift, trust, or bequest. The bequest drops out of consideration, because it is not claimed that the transfer is in the requisite form to constitute a valid bequest, i. e., there is no compliance with the statute of wills. There thus remain two theories, upon one or the other of which the right of the survivor to the fund must be based, i. e., gift or trust. Unless the survivor can show title in one of these ways, his claim must fail."

In presenting their case to this court, counsel for Mr. and Mrs. Green present their principal argument on this phase of their controversy under the following proposition:

"Where money is deposited in a bank in the name of two or more persons with authority of any of them to exhaust said deposit without being joined by the others, there is created in presenti a joint ownership with the right of survivorship and upon the death of one the entire ownership is in the living ones to the exclusion of the administrator and heirs of the deceased one."

The proposition does not on its face reflect the precise theory upon which the Greens rely, but from an examination of their argument in their brief and reply brief it is apparent that they rely upon the contract theory and the theory of a gift consummated by the execution

of a contract with the bank when the initial deposit was made and by the method in which the deposit and the proceeds thereof were then and thereafter handled. They do not, however, agree with the manner in which the administrator and intervening heirs would apply the gift theory, or as they say, they do not agree with the " ' gift theory' with the interpretation used by the attorneys for the plaintiff and intervenors."

The scope of the argument eliminates the necessity of considering the transaction either as a bequest or trust. It may therefore be assumed without decision on the point that the right of survivorship in a joint account cannot be sustained as a bequest because the statutes regulating the manner in which wills are executed have not been complied with. Jonte v. English, 171 Okla. 291, 40 P. 2d 646. It may also be assumed that the essential requisites of a trust are not herein present.

In cases of this character the theory that the transaction may rest entirely upon contract independent of any gift has a very narrow application. If the contract on the part of the original owner is executory in nature, that is, if it constitutes a present agreement to later give an interest in the money, it is, in the absence of consideration, nonenforceable. Of course, if a contract is of such a character as to constitute and consummate a present conveyance of a vested joint interest and right of survivorship in the fund or deposit, a different situation is presented. It is not impossible that an instrument can be so drafted as to accomplish that result. Counsel for the Greens point to certain language appearing on the original and subsequent deposit slips, and other agreements prepared by the bank, which is said to have the effect of authorizing a withdrawal by one of the persons named as depositor after the death of his codepositors. They assert in substance that this language alone constituted a contract between the depositors which as a matter of law operated to immediately vest each of the depositors with a present joint interest and right of survivorship.

Printed forms of deposit slips and other forms containing language of the purport above indicated are frequently used by banks in connection with joint accounts for the principal purpose of affording protection to the bank in case of withdrawals by one named codepositor after the death of another, without any reference to the rights or arrangements of the codepositors among themselves. They appear in instances where the actual arrangement between the depositors does not contemplate the right of survivorship at all. For this reason the courts are reluctant to construe them as instruments of conveyance creating a joint interest and the right of survivorship, especially where the fund on deposit was furnished by only one of the parties. Generally speaking, the courts look beyond the arrangement with the bank to determine whether the gift of a vested joint interest was intended. Olshan v. East New York Savings Bank, 28 Fed. Supp. 727; Sinift v. Sinift, 229 Iowa, 56, 293 N. W. 841; Menger v. Otero County State Bank, 44 N. M. 82, 98 P. 2d 834; and other cases appearing in the annotations above mentioned, indicated by book and page, 135 A. L. R. 995 et seq; 103 A. L. R. 1124 et seq.; 66 A. L. R. 882.

In the case of Hickman v. Barrett, supra, this court was confronted with a joint account connected with a certificate of deposit contemplating withdrawal by either or both of the named depositors. We held that such a certificate was not in itself sufficient to create the joint interest and right of survivorship, and under the facts in that case did not so operate. It was therein determined from other evidence that such was not the arrangement between the parties and that no joint interest and right of survivorship had vested. It is to be noted, however, that in the case last cited, specific provision for withdrawal by the survivor was not made.

To the additional language, prescribed by the bank in its form for joint depositors, providing for withdrawal by

the survivor, a great deal of importance has been attached by some courts. Bender v. Cleveland Trust Co., 123 Ohio St. 588, 176 N. E. 452; compare Cleveland Trust Co. v. Scobie, Adm'r, 114 Ohio St. 241, 151 N. E. 373, 48 A. L. R. 182. However, the more general and we believe the better view is that such additional language is a circumstance to be considered in conjunction with the relationship of the parties and other circumstances in the case. Its weight as a circumstance may vary greatly with the different relationships between the codepositors. It may correspond to the arrangement between the parties or it may be solely for the convenience and protection of the bank and as such constitute an agreement between the depositors and the bank as distinguished from a contract between the depositors. Of course, different considerations apply to a contract strictly between the depositors and a form prepared by the bank may be used by depositors as a means of carrying out their arrangements.

In determining whether the gift of a bank deposit or of a joint interest therein has been made, a circumstance which claims a degree of consideration is whether or not the bank book or other indicia of ownership has been delivered. 24 Am. Jur. 781; 48 A. L. R. 189, at 201. However, such a delivery is not conclusive. Hickman v. Barrett, supra.

The determination of whether or not the former owner of the money or deposit has made a gift inter vivos so as to vest in a codepositor as donee a joint interest in the deposit with right of survivorship comprehends two indispensable elements. First, an intent on the part of the donor to give such an interest. And, second, an act on the part of the donor sufficient to constitute a symbolic delivery of the interest which being in the nature of a chose in action against the bank is incapable of manual delivery. There are other elements which sometimes claim consideration but which are not involved in this case. Jonte v. English, supra.

Bearing in mind the foregoing concepts of the law, we now address ourselves to consideration of the facts in the case at bar for the purpose of determining whether such intent and delivery are present in this case.

Subsequent to the time when in August of 1936 Mrs. Ella McCracken transferred the sum of money heretofore mentioned from Oklahoma to Oregon and created the joint account for $2,-844.03 in the name of herself and sister, the deposit thus made (less expenditures made from time to time) remained in Oregon banks until the final and fatal illness of Ella McCracken in July of 1939. During most of the time Ella McCracken was in Oklahoma.

When the money was first deposited it was all placed in one bank; later it was divided between two. Part of the time it was in savings accounts; part of the time it was represented by certificates of time deposit. A portion was placed in a commercial checking account for convenience in using.

During practically all of the time the bank record depicted the money to be the property of Ella McCracken and her sister, Mrs. Ira Green, or Mrs. McCracken and her sister and brother-in-law. During the period of time numerous transactions were had with the banks. Most of these transactions were handled by Ira Green. A few of them were specifically directed or requested by the deceased, but many were initiated by Green without direction. Some of the deposits were used, that is, spent and not replaced. A portion of the money thus used was expended for the individual benefit of the Greens; a portion for the benefit of Mrs. McCracken. There were some additions to the deposits made by funds derived from business transactions of the Greens, but these were relatively small, and in the main it may be said the deposits were attributable and related back to the money originally transferred to Oregon by Mrs. McCracken.

It is unnecessary to burden this opinion with a mass of details depicting

various individual transactions. While various evidentiary values may be attributed to individual transactions, it is sufficient to observe that the many transactions were in no wise inconsistent with the previous gift of a joint interest in a bank account by a donor who retained an interest in herself. In this connection it is appropriate to state that the retention of the interest by the donor is not inconsistent with the vested interest in the donee. See annotation 66 A.L.R. pgs. 888, 889.

In addition to inferences which may properly be drawn from the freedom with which the parties dealt with the funds on deposit, we have before us the testimony of two witnesses to whom the deceased during her lifetime made statements to the effect that she had given money to the Greens which was then avilable to them. While she did not in such statements identify the money given, specify the amount thereof, or explain the manner in which she had accomplished or thought she had accomplished the gift, we think it is the fair and reasonable inference from the entire record that she alluded to the interest in the bank deposits placed in the Oregon banks. Such an intent to give furnishes a plausible and the most reasonable explanation of changing the situs of the bank deposits to Oregon.

Her general disposition to place her property at the disposal of the Greens is also indicated by the manner in which she dealt with the real estate in Hominy, a matter which we shall subsequently treat and which is alluded to here only for its bearing upon the question of intent.

From an examination of the record before us we think the conclusion is inevitable that the deceased intended to place her money in a joint account for the purpose of vesting immediately a joint interest therein in the Greens and with a view to conferring on them the right of survivorship. The essential ingredient of intent was therefore present.

The trial court entertained a similar view on the question of intent as evidenced by its statements in orally pronouncing judgment. It then stated:

"I will make this statement so that you will understand the court's position: in my opinion, it was the intention of Ella McCracken that they could use this money just like she could. She had absolute and ultimate confidence in the integrity of Mr. and Mrs. Green. She felt close to them, as those things exist in a family. I do not think that we have any way of explaining, but there is somebody somewhere in a family, and sometimes out of the family, in whom we have greater confidence, and there is a closer relationship than with the other members of the same family. That existed as between Ella McCracken and her sister, Mrs. Green, and she had the same ultimate and absolute confidence in Mr. Green that she had in her sister. In my opinion, they became one party, being pals. She no doubt intended to give them this money, and she no doubt intended to convey to her sister this real estate; but legally, according to the law and according to the rulings of our courts, the Grim Reaper cut her down before she consummated her intentions. Mrs. McCracken was a very able and very frugal woman, and she retained control, in my opinion, of this money, so to speak—not in the extreme sense possibly of the law, but under the evidence here she had more confidence in her own ability, undoubtedly, than she had in Mr. and Mrs. Green's ability. She was a woman who had made considerable money, far more than the average person of her age and opportunities. There is not any question but what there is a lot of evidence to the effect that she aimed to give all this property to her sister and to her brother-in-law, but she just did not consummate that intention. . . ."

There is some question presented in the briefs as to the extent to which and purpose for which these oral pronouncements of the trial court may be considered on appeal. (See rule in Rogers et al. v. Harris, 76 Okla. 215, 184 P. 459; but consider and compare the rule in Ruby v. Warrior, 71 Okla. 82, 175 P. 355.) However, since the expression of the trial court corresponds with our own independent judgment as to what the proof reflects on the question of in-

tent, there is no necessity of determining the legal effect of the oral pronouncement of the trial court.

We are likewise of the opinion that there were sufficient overt acts on the part of the decedent to accomplish her intent. She herself transferred the money from Oklahoma to Oregon. She herself opened the initial joint account. She so arranged the transactions that the Greens received possession of the pass books and other evidence of ownership. She authorized them to deal with the account or accounts in the manner of persons having present vested interests therein. By virtue of the intent of the deceased, coupled with her acts, the Greens were vested with the right of survivorship and by reason of that right are now the owners of the remainder of the fund which at and before the time of Ella McCracken's death constituted the joint account or accounts.

The administrator and the other heirs say this conclusion is not in accord with Jonte v. English, supra, and Hickman v. Barrett, supra. Those cases are not controlling. In both the cited cases it was determined that the essential ingredient of intent to give a present vested interest was not established. Such absence of proof of intent is not an inherent weakness in this case.

In connection with the proof in this case there is a sharp dispute between the parties as to whether it was established by competent evidence of sufficient probative force that Ella McCracken actually signed some of the instruments used by the banks in connection with the accounts which purported to bear her signature. The evidence appears in depositions. The probative force of the evidence offered is somewhat questionable, as is the method adopted by the adverse party for challenging it. Likewise, there is a dispute in connection with the testimony of Mr. Green as to the extent to which his statutory disqualification had been waived. Our conclusion is not based upon the questioned evidence. A consideration of these questions in this opinion is rendered unnecessary since our conclusion is not impelled by the contract theory and is based upon other evidence not subject to reproach. Similarly, the Greens have unnecessarily invoked an Oregon statute which they did not plead and prove. See Hinds v. Atlas Acceptance Corporation, 178 Okla. 474, 63 P. 2d 29. They also seek to defeat recovery against them on consideration of the intangible tax law. In view of our conclusion as above announced, we deem it unnecessary to discuss this question.

While the trial court was in error in holding against the Greens in connection with the joint bank accounts, its decision was unquestionably correct in connection with the real estate situated in Hominy.

It was the desire of Mrs. McCracken as established by the evidence that upon her death the Greens should have the real estate. In other words, she desired to make a testamentary disposition. A will would have been appropriate for the purpose. Possibly a similar result could have been accomplished by creating a joint tenancy (see Clinton v. Clinton, 187 Okla. 144, 101 P. 2d 609) or by conveying the property subject to a life estate in herself. These latter methods would, of course, have involved the vesting in the grantees of a present interest in the property which would have prevented Ella McCracken from conveying in fee simple during her life.

Mrs. McCracken decided to retain control of the fee during her life and control the disposition thereof at her death by means of two deeds. She sought the services of a lawyer to act as scrivener, and despite his suggestion that the scheme might not work, she had him prepare one deed from herself to Mrs. Green. That was on February 2, 1937. At the time she was in Oklahoma, Mrs. Green was in Oregon. Mrs. McCracken caused this deed to be recorded in Osage county, Okla., and returned to her. It was never delivered to Mrs. Green. The recording did not necessarily import delivery (Belky v.

Terrell, 93 Okla. 134, 219 P. 887), although some authorities sustain the act of recording as sufficient to constitute delivery if it was so intended.

The question of whether the recording was intended to and did constitute delivery would be an important one in this case if it were not for another deed to the same property prepared in Oklahoma by the same lawyer as scrivener and subsequently executed by the Greens and delivered by them to Ella McCracken and found among her papers when she died. If the Greens ever acquired any interest in the land by virtue of the first deed, it was shortly thereafter reconveyed to Mrs. McCracken, who continued in possession of the property, paid the taxes and insurance thereon, and in all respects exercised her rights as owner thereof. Obviously, this exchange of deeds constituted an abortive attempt to make a 'testamentary disposition of property through the use of instruments not executed according to the statute of wills. Under the decisions of this court the attempt cannot be sustained as a testamentary disposition. Maynard et al. v. Hustead, 185 Okla. 20, 90 P. 2d 30; Loosen et al. v. Stangl, 163 Okla. 231, 22 P. 2d 364; Snodgrass v. Snodgrass, 107 Okla. 140, 231 P. 237, 52 A.L.R. 1213. Under the deeds as executed and delivered, Mrs. McCracken was the owner of the property at the time of her death.

We therefore conclude that in connection with the joint accounts Mrs. McCracken's intent and acts were such as to vest in the Greens the right of survivorship, which entitles them to the balance of the deposits for which an accounting is herein sought. The trial court erred in holding otherwise and its disposition on this phase of the case is reversed, with directions to enter judgment for the Greens.

The trial court correctly decided the controversy in connection with the real estate and in that respect its judgment is affirmed.

CORN, C. J., GIBSON, V. C. J., and RILEY, OSBORN, BAYLESS, WELCH, and HURST, JJ., concur. ARNOLD, J., absent.