## FLESHER v. FLESHER.
No. 35469.

Supreme Court of Oklahoma.

June 23, 1953.

Rehearing Denied July 14, 1953.

John B. Ogden, Oklahoma City, for plaintiff in error.

Embry, Johnson, Crowe, Tolbert & Boxley, V. P. Crowe, John A. Phillips, Oklahoma City, for defendant in error.

Homer L. Hurt, Tulsa, George Miller, Jr., Oklahoma City, for Maggie L. Bush, amicus curiae.

O'NEAL, Justice.

This case involves the question of whether certain investment accounts in the Capitol Hill Building & Loan Association, Oklahoma City Federal Savings & Loan Association, Home Federal Savings & Loan Association and Capitol Federal Savings & Loan Association, all of Oklahoma City, Oklahoma, of the face value of $5,000 each, and an investment account in the Ponca City Savings & Loan Association of Ponca City, Oklahoma, of the face value of $1,000, and certain deposits in the First National Bank and Trust Company of Oklahoma City, Oklahoma, all standing in the joint names of Carrie E. Cook and Abbie P. Flesher, are the sole property of Abbie P. Flesher, by reason of the death of Carrie E. Cook, or whether said investment accounts and bank deposits are assets of the estate of Carrie E. Cook, deceased.

For convenience the parties will be referred to by their trial court designations.

Plaintiff bases his cause of action upon allegations that prior to April 3, 1946, Carrie E. Cook, the deceased, was the owner of stock and accounts in the named building and loan associations and a checking account in the named bank; that upon subsequent dates, Mrs. Cook had her individual stock and account certificates issued in the name of Carrie E. Cook or Abbie P. Flesher, her niece, as joint tenants with the right of survivorship. The bank account was likewise changed to their joint account.

Approximately two years thereafter and on June 25, 1948, Carrie E. Cook executed her will in which she designated Maggie L. Bush and Mary E. Phillips, her sisters, as her principal beneficiaries to share equally in all of her estate, except a small bequest made to Abbie P. Flesher.

Carrie E. Cook died on the 4th day of August, 1948, and as provided in her will, Dr. William E. Flesher was designated the executor thereof by order of the County Court of Oklahoma County, Oklahoma, with instructions to administer the estate. In the course of the administration proceedings, Mrs. Bush petitioned the County Court to require the executor to take necessary steps to recover the investment accounts in the named associations and the bank account as assets of the estate of Carrie E. Cook. From an adverse order Mrs. Bush appealed to the District Court. Upon a hearing had in the District Court the court found that "there was reasonable grounds for believing that the building and loan stock and the bank deposit belonged to the estate of Carrie E. Cook, deceased," and, therefore ordered the executor, under the will, to institute a suit against Abbie P. Flesher to determine the ownership of the properties involved. Thereupon the present action was filed resulting in a finding that the stock and investment certificates and accounts were assets of the estate and that the defendant had no right, title or interest therein, save and except a certificate of stock in one of the designated associations which, under an agreed stipulation of the parties, was set over to Abbie P. Flesher. From the judgment rendered for the plaintiff, defendant appeals.

Counsel in their briefs concede that the controlling question for our decision is whether the accounts vested in Mrs. Flesher an absolute right of ownership as a gift inter vivos.

The evidence is without dispute that Carrie E. Cook had invested her individual funds in the named associations and the bank prior to April, 1946; Abbie P. Flesher at no time added to or withdrew any portion of the funds in the associations. Upon various dates thereafter, Carrie E. Cook caused said accounts to be cancelled and new certificates issued in lieu thereof to Carrie E. Cook or Abbie P. Flesher, with the right of survivorship. The reissued certificates were delivered to Abbie P. Flesher and remained in her possession until the death of Mrs. Cook. Mrs. Flesher then returned the certificates to the associations for cancellation and for reissue thereof to herself as the survivor under the provisions contained in the certificates.

This transaction standing alone and solely upon the writings evidencing the establishment of the joint accounts leads to but one conclusion and, that is, that Carrie E. Cook intended that the association stock and the bank deposit were jointly owned by herself and Abbie P. Flesher, with the right of survivorship. The certificates are in the usual form employed by the associations and provide:

"This Certifies That Mrs. Carrie E. Cook or Abbie P. Flesher as joint owners and not as owners in common, on the death of one, the survivor to become the absolute owner."

The form and substance of each certificate issued by the associations conforms to the requirements of 18 O.S.1951 § 212b.

Joint tenancies with right of survivorship are mentioned in Blackstone's Commentaries, as follows:

"The creation of an estate in joint tenancy depends upon the wording of the deed or devise, by which the tenants claim title, and can only arise by the act of the parties; for joint tenants have one and the same interest. He further says that the interest of the two joint tenants is not only equal or similar, but also is one and the same, and that each of the two joint tenants has a concurrent interest in the whole; and therefore, on the death of his companion, the sole interest in the whole estate remains to the survivor."

We have so recognized joint tenancies as a part of the body of the common law of this State. Kilgore v. Parrott, 197 Okl. 77, 168 P.2d 886. In Royston v. Besett, 183 Okl. 643, 83 P.2d 874, it was held that the survivor was the owner of a deposit in the bank and stock in a building and loan association as a joint tenant without express words as joint tenancy or survivorship. Moreover, a joint tenancy and tenancy by entirety is expressly recognized by our statute. 60 O.S.1951 § 74, Laws of 1945, p. 213, § 1.

It will be noted this statute does not in express terms employ the term "survivorship." Construing the statute in Draughon v. Wright, Adm'x, 200 Okl. 198, 191 P.2d 921, 923, we said:

"We cannot agree that 60 O.S.1945, Supp. § 74 creates a statutory joint tenancy without survivorship because survivorship is not mentioned in that statute. The term 'joint tenancy' had a well defined meaning at common law, and, since the Legislature did not define the term or use language indicating a contrary intention, we must presume that it used the term in its technical common law sense."

We pass to a consideration of the evidentiary facts to determine the ultimate fact of whether under the writings here drawn in dispute, Carrie E. Cook intended to irrevocably vest these accounts in Mrs. Flesher as a gift inter vivos; or whether her true intention and purpose was to employ her as her agent and trustee to distribute the funds represented by the accounts to her heirs and others upon her death.

Dr. Wm. E. Flesher testified that on the day after Mrs. Cook's death her will was read in the presence of approximately twelve persons; that there was some discussion about the building and loan associations stock and that Mrs. Flesher stated: "That it would be carried on to the—some of it would be carried on to the cousins."

At the trial the court propounded the following question to Dr. Flesher: "Was she the one that said the cousins were to receive a certain portion of them?" He answered: "Well—yes."

Mrs. Abbie P. Flesher, the defendant, testifying with reference to the meeting referred to by Dr. Flesher stated that Mrs. Bush, her aunt, and Mrs. Phillips, her mother, one of her brothers and several cousins and others, attended that meeting; that in response to a question whether she (Mrs. Flesher) had made a statement that she intended to transfer the funds that Mrs. Cook had transferred to her to other people, she replied: "I told them that we had talked about—that she would like to remember other people if the funds were there. You see, she lived several months after she talked to me about that." Mrs. Flesher testified to numerous conversations with Mrs. Cook, in which Mrs. Cook requested that the funds derived from the building and loan associations stock be dis-

tributed in various amounts to Mrs. Bush and Mrs. Phillips, sisters of Mrs. Cook, and also to certain children of a deceased brother.

Several days after the death of Mrs. Cook, Mrs. Flesher wrote a letter to her aunt, Mrs. Maggie L. Bush, and in that letter she said in part:

"While she was with us, I had but one desire, and that was to do things as she wished them done. I never lost sight of the fact that every cent was her own money and not mine. I always felt sorry for her that she had to entrust any of her business to anyone of us, because she never did it while she was well. Again and again I kept assuring her that I would do just as she wished with her money. It was no more than I should have done, because it was hers alone.

"* * * I have but one supreme desire in my heart and that is to do to the letter everything that I promised Aunt Carrie I would do. I know she would have done it for me, and I intend to do it for her.

"I have no plans but to carry out hers. She is gone now, and we who love her carry her torch; above all let us do exactly as she instructed us. It won't be hard, because she made everything so plain. * * *"

Several weeks after the death of Mrs. Cook, Mrs. Flesher wrote a lengthy letter to a lady in California, a former friend of Mrs. Cook. From this letter it appears that the friendly relationship previously existing between Mrs. Flesher and her Aunt Maggie Bush, had come to an end. Omitting the personal references in that letter we quote the following excerpts:

"Of course you do know that Aunt Carrie had my name placed upon her checking account several months before she became ill. Well, at the same time she had me made a co-owner with her in her Building and Loan stock. This was not to be connected in any way with the will, as she hoped to avoid inheritance taxes and so forth.

She told me who the people were that I was to pass it on to, and she trusted with to do it, as I feel she expects me to now."

Complaining of her Aunt Maggie Bush, she-stated:

"* * * As if that wasn't enough for Aunt Carrie to do for her. and mamma, she wants to get her hands on all else that she left to others. * *"

From the letter it appears that Mrs. Flesher did not approve of certain actions taken by Mrs. Bush with reference to a transaction had between Mrs. Bush and Mrs. Cook. The reference in the letter is as follows:

"* * * It amounts to forgery, and if she gets in line and will keep out of the plans Aunt Carrie made for her own money, we want to have it fixed up if possible and not make any trouble for her. * * * Mama is doing fine and wants the things Aunt Carrie wanted done, to be carried out to the letter. * * *"

Mrs. Bush testified with reference to a conversation had with Mrs. Flesher in the presence of Mrs. Cook. The three were discussing the disposition to be made of the building and loan stock and bank account. In that conversation, as detailed by Mrs. Bush, she stated: "Abbie Flesher took it out of my sister's mouth and said that she was to get, I believe, five thousand dollars, and her brother five thousand dollars, and me one thousand dollars, and my other sister, Mrs. Phillips, fifteen hundred dollars, and Mrs. Holton, I believe hers was two or three thousand dollars, and my nephew, Miley, was three thousand dollars, and the two in California was five hundred dollars apiece. There was another Cook boy, I can't call his name, he was to get some but I don't remember just what, and—."

It is obvious that Mrs. Flesher at no time denied that this conversation occurred. Again when Mrs. Flesher was asked: "Do you claim ownership of all of these accounts at this time?" she replied: "Well—yes; according to the record, I am the owner."

904

The general rule to be applied here is stated in 7 Am.Jur., Banks, § 426, p. 300, as follows:

"Where money belonging to one person is deposited to the account of himself and another, or where money deposited by the owner to his own account is changed to the account of himself and another, the relation which is thereby created depends primarily upon the intention of the depositor. It may be that such deposit is made for the mere convenience of withdrawals, with no intention of passing title from the depositor, or it may be that the intention was to create a joint interest in the other depositor either presently or at the death of the depositor. The forms in which those deposits are made are varied; some are simply in the name of the depositor 'and' another, while others are in the name of the depositor 'or' another. Words of survivorship frequently appear. It is intended herein to cover such deposits in whatever form they are made.

"In cases involving such deposits, questions frequently arise concerning the right of the one other than the original owner to the fund upon the death of the original owner. Apart from the contract theory, which is comparatively rare, this leaves the title of the survivor to rest upon a gift, trust, or bequest. The bequest drops out of consideration, because it is not claimed that the transfer is in the requisite form to constitute a valid bequest, i. e., there is no compliance with the statute of wills. There thus remain two theories, upon one or the other of which the right of the survivor to the fund must be based, i. e., gift or trust. Unless the survivor can show title in one of these ways, his claim must fail."

The evidence does not sustain the proposition that the title to the funds passed to the defendant as a gift inter vivos; neither is it here claimed that the transfer is in the requisite form to constitute a valid bequest, i. e., there being no compliance with the statute of wills. The evidence in its entirety leads us to the conclusion that the transfer of the certificates of stock and bank account was the means employed by Mrs. Cook in an attempt to make a disposition of the bulk of her estate through the medium of Mrs. Flesher, and with an intent to avoid the payment of inheritance taxes; therefore, the defendant held the estate in trust subject to its disposition under the will of Carrie E. Cook, deceased. The donor not having parted with dominion over her property during her lifetime the gift theory cannot be sustained. Hickman, Ex'r, v. Barrett, 175 Okl. 262, 52 P.2d 40; Jonte, Ex'x, v. English, 171 Okl. 291, 40 P. 2d 646.

The defendant lays great stress upon the contract theory to sustain her position of ownership of the accounts. As indicated in the Annotator's statement in 7 Am.Jur., supra, the contract theory has not frequently been advanced; neither do we think that the defendant's reliance on Matthew v. Moncrief, 77 U.S.App.D.C. 221, 135 F.2d 645, 149 A.L.R. 856, is decisive of the present controversy. In the Federal case the complainants alleged ownership of the stock as heirs of the deceased. The donee claimed ownership as the survivor of the joint account. Plaintiff's complaint was dismissed upon defendant's motion upon the ground that under the written instrument standing alone the title to the fund was vested in the donee. In that case the court said:

"Where donor and donee-survivor both signed a deposit card which purported to create a joint account subject to demand of either, and upon death of either to the survivor, under 'parol evidence rule' written intention of the parties as expressed in that instrument could not be altered or destroyed by parol evidence, in absence of fraud or mistake in the execution thereof.

"Where donor and donee signed deposit card containing words expressing a clear and unequivocal intention on part of donor to make donee a joint owner, and containing a survivorship clause, on donor's death, the donee was entitled to the account, in absence of

fraud or mistake or incapacity on part of donor in the execution thereof."

As designated by the court's pronouncement, the donee was entitled to the fund in absence of fraud or mistake in the procurement of the contract. That cause was submitted upon pleadings alone and not upon any contention by either party that the contract did not in fact express the true intention of the parties.

In the executor's petition in the case before us, he alleged that the joint accounts were not intended to convey or transfer any interest to the defendant, but were placed in her custody with instructions to distribute the proceeds thereof to various heirs upon the death of Mrs. Cook; and that the defendant held the certificates in trust for the benefit of the estate of Mrs. Cook.

Under the issues joined in the instant case, we are called upon to determine the intention of the parties when they entered into the arrangements here detailed.

■ In the case of Green v. Comer, 193 Okl. 133, 141 P.2d 258, we said:

"A person who owns the money or credit which creates a bank account may by gift vest in another, named as co-depositor, a joint interest and right of survivorship while retaining a similar interest and right in such account.

"Two essential requisities of a valid gift are the intent to give and the delivery of the things given, either manually or symbolically."

To the same holding are the cases of Royston v. Besett, 183 Okl. 643, 83 P.2d 874; Munday v. Federal Nat. Bank, Adm'r, 195 Okl. 120, 155 P.2d 526.

■ The defendant's contention that the trial court committed reversible error in the admission of incompetent evidence is based upon the admission of testimony given by Mrs. Bush, one of the legatees under the will of Carrie E. Cook, deceased, and also the testimony of the defendant, Mrs. Flesher. The contention is without merit for the reason that Mrs. Bush was not a party to the record in the instant case, and Mrs. Flesher's testimony was not offered against the executor, but in his behalf. Lieuallen, Ex'r, v. Young, 115 Okl. 153, 241 P. 342.

We find incongruity in both the proof submitted and the findings of fact and conclusions of law as disclosed by the trial court's judgment. In paragraph eight of the Journal Entry of Judgment the defendant, Mrs. Flesher, is authorized to retain for herself the sum of $5,000, and is directed to distribute the balance of the proceeds of the building and loan stock and the bank account to sundry persons (not naming them) but as they appear from the evidence adduced. The court then finds generally in favor of the executor of the estate of Carrie E. Cook, deceased, and against Abbie P. Flesher, for the recovery of all of said designated building and loan associations stock and bank account, except that Mrs. Flesher is entitled to retain the certificate in the Capitol Hill Building and Loan Association of the face value of $5,000. The court's judgment says that the certificate of stock is set aside to Mrs. Flesher for the reason that Mrs. Cook directed that Mrs. Flesher should retain for herself the sum of $5,000 out of said trust fund.

■ We hold that after the court found that these certificates were assets of the estate of Mrs. Cook, and were trust funds in the hands of Mrs. Flesher, that the court's jurisdiction in the case ended, and the portion of the judgment directing Mrs. Flesher to distribute the proceeds of these accounts to sundry persons as indicated in Mrs. Cook's oral request, is a nullity.

The court's finding that Mrs. Flesher held the accounts as a trustee and the judgment rendered in support of that finding divested Mrs. Flesher of all right, title and interest in the accounts. The future disposition of the proceeds of said accounts is a matter for the decision of another court under the provisions of Mrs. Cook's will, or the further administration of her estate.

■ The executor here did not file a motion for a new trial challenging the judgment, nor did he file a cross petition in error. From the briefs and oral arguments we assume the parties are content with the portion of the judgment setting over to

Mrs. Flesher the certificate of stock heretofore designated. The court having jurisdiction of the parties and the subject matter the disposition of the case must stand. Our appellate jurisdiction, under these circumstances, does not give us the inherent power to vacate an erroneous judgment unless an appeal is perfected in the manner provided by law.

The record here discloses that by stipulation of the parties no appeal is taken from that part of the judgment in favor of the defendant, Abbie P. Flesher, authorizing her to retain the investment account and stock membership certificate in the Capitol Hill Building and Loan Association of Oklahoma City, Oklahoma, in the principal sum of $5,000.00 issued on or about the 5th day of April, 1946.

The judgment of the trial court carried with it a finding of all facts necessary to support it, and this court will not reverse the judgment unless it is against the clear weight of the evidence. Burns v. Bastien, 174 Okl. 40, 50 P.2d 377.

The judgment of the trial court is affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, WILLIAMS and BLACKBIRD, JJ., concur.